**UNITED STATES SURGICAL CORPORATION, Plaintiff–Appellant,**

v.

**ETHICON, INC. and Johnson & Johnson Hospital Services, Inc., Defendants/Cross–Appellants.**

**Nos. 94–1386, 94–1419.**

United States Court of Appeals, Federal Circuit.

Jan. 3, 1997.

William E. McDaniels, Williams & Connolly, of Washington, D.C., for plaintiff-appellant. Of counsel were J. Alan Galbraith, David S. Blatt, Basam E. Nabulsi, Thomas R. Bremer, and John C. Andres.

David F. Dobbins, Patterson, Belknap, Webb & Tyler, New York City, for defendants/cross-appellants. Of counsel were Gregory L. Diskant and Eugene M. Gelernter.

Before NEWMAN, Circuit Judge, BENNETT, Senior Circuit Judge, and RADER, Circuit Judge.

PAULINE NEWMAN, Circuit Judge.

The court's prior judgment of this appeal and cross-appeal was vacated by the Supreme Court and remanded "for further consideration in light of *Markman v. Westview Instruments, Inc.*, 517 U.S. ——, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996)." *U.S. Surgical Corp. v. Ethicon, Inc.*, —— U.S. ——, 116 S.Ct. 1562, 134 L.Ed.2d 662 (1996). Our prior judgment affirmed the judgment of the United States District Court for the District of Connecticut,[1] entered on jury verdicts that claim 1 of U.S. Surgical's United States Patent No. 5,100,420 (the '420 patent) is infringed but invalid for obviousness, and that claims 1, 2, and 7 of United States Patent No. 5,084,057 (the '057 patent) are not infringed and are invalid for obviousness. The issue of inequitable conduct during patent prosecution was decided before trial, by summary judgment in favor of U.S. Surgical. Each of U.S. Surgical and Ethicon appealed the rulings adverse to it. After full briefing and oral argument this court entered judgment pursuant to Federal Circuit Rule 36:

Rule 36: Judgment of affirmance without opinion.——

The court may enter a judgment of affirmance without opinion, citing this rule, when it determines that any of the following circumstances exist:

(a) the judgment, decision or order of the trial court appealed from is based on findings that are not clearly erroneous;

(b) the evidence in support of a jury verdict is sufficient;

(c) summary judgment, directed verdict, or judgment on the pleadings is supported by the record;

(d) the decision of an administrative agency warrants affirmance under the standard of review in the statute authorizing the petition for review; or

(e) a judgment or decision has been entered without an error of law;

and an opinion would have no precedential value.

Appeals whose judgments are entered under Rule 36 receive the full consideration of the court, and are no less carefully decided than the cases in which we issue full opinions. The Rule permits the court to dispense with issuing an opinion that would have no precedential value, when the circumstances of the Rule exist. *See Taylor v. McKeithen*, 407 U.S. 191, 194 n. 4, 92 S.Ct. 1980, 1982 n. 4, 32 L.Ed.2d 648 (1972) ("We, of course, agree that the courts of appeals should have wide latitude in their decisions of whether or how to write opinions. That is especially true with respect to summary affirmances.")

Seven weeks after this decision, reported at 48 F.3d 1237 (Fed.Cir.1995) (Table), for which rehearing and rehearing *en banc* were denied, the Federal Circuit decided *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 34 USPQ2d 1321 (Fed.Cir.1995) (*en banc*). The Supreme Court granted certiorari in *Markman* and also upon U.S. Surgical's petition. After deciding the *Markman* appeal, reported at 517 U.S. ——, 116 S.Ct. 1384, 134 L.Ed.2d 577, 38 USPQ2d 1461 (1996), the Court instructed the Federal Circuit to give further consideration to U.S. Surgical's case in light of the Court's decision in *Markman*. We have done so.

The judgment of the district court is affirmed, on the ground of invalidity of the '420 and '057 patents based on obviousness. We do not reach the issues of infringement and the conditional cross-appeal of the issue of inequitable conduct. *See Consolidated Aluminum Corp. v. Foseco Int'l Ltd.*, 910 F.2d 804, 814, 15 USPQ2d 1481, 1489 (1990) ("a party may defend a judgment 'on any ground properly raised below'") (citing *Washington v. Yakima Indian Nation*, 439 U.S. 463, 476 n. 20, 99 S.Ct. 740, 749 n. 20, 58 L.Ed.2d 740 (1979)); *Lough v. Brunswick Corp.*, 86 F.3d 1113, 1123, 39 USPQ2d 1100, 1107 (Fed.Cir. 1996) ("No further public interest is served by our resolving an infringement question after a determination that the patent is invalid."). We now fully explain our decision.

---

1. *U.S. Surgical Corp. v. Ethicon, Inc.*, No. 5:92 CV 00134(AVC), (D. Conn. Feb. 11, 1993 (Summary Judgment); February 18, 1994 (Judgment Order); June 9, 1994 (Ruling on Post-trial Motions)).

### The U.S. Surgical Inventions

The inventions claimed in the '420 patent and its continuation-in-part the '057 patent are for a surgical instrument for ligating blood vessels and other tissues during endoscopic surgery, by applying multiple ligating clips in sequence.

Endoscopic surgery is a procedure whereby instead of opening the abdomen or other body cavity by incision to provide open access to the surgical site, the surgery is performed by inserting the surgical instruments into the body through small tubes called trocars. The small size of the incisions that accommodate the trocars results in less tissue damage, less pain, and faster healing than for traditional open surgery. In performing endoscopic surgery the body cavity is inflated with a gas, called an insufflating gas, to provide working space. For most procedures today a miniature video camera is used to televise the surgical site, the enlarged video image appearing upon an external screen and guiding the surgeon or surgical team in manipulating the instruments through the trocars.

Endoscopic surgery was in somewhat limited use for many years, having been used mostly for the ligation of fallopian tubes, the surgeon viewing the site through an eyepiece. Endoscopic procedures experienced rapid expansion after about 1989, particularly for gallbladder removal. Witnesses disputed at trial whether the expansion was due to the development of the miniature video camera or the development of U.S. Surgical's endoscopic multiple clip applier.

During both endoscopic and open surgery, blood vessels may be closed and tissues clamped using small "U" shaped clamps called ligating clips. Ligating clips are applied by an instrument that positions the clip about the tissue or vessel to be secured and then compresses the clip. When initially developed, ligating clip instruments were capable of being loaded with only one clip at a time, and required reloading between each application. Then U.S. Surgical developed a ligating clip applier for open surgical use that applied multiple clips in succession, without reloading the instrument. This instrument, having the brand name "Premium Surgiclip," is the subject of United States Patent No. 5,030,226 (the '226 patent). The Premium Surgiclip and the '226 patent are prior art to the '420 and '057 patents in suit, and were the subject of extensive testimony at trial.

At trial witnesses explained the subsequent development of the instrument of the patents in suit, a ligating clip applier for endoscopic use that applies multiple clips in succession without withdrawing and reloading the instrument. U.S. Surgical's instrument, having the brand name EndoClip, was the first multiple clip applier for endoscopic use. The instrument is depicted in the '420 patent as follows:

Fig. 1 of '420 patent.

**1558**

The instrument is depicted in the '057 patent with a different handle, as follows:

. . Fig. 1 of '057 patent.

It is seen that these instruments have an elongated shank that holds the ligating clips and is shaped for endoscopic use through a trocar. After insertion into the body cavity a clip is pushed into position in the jaws using controls on the handle, and the clip is applied to the tissue to be ligated by closing the jaws using controls on the handle. The jaws are then opened and the next clip is pushed into position. Thus successive clips may be applied without withdrawing the instrument from within the body.

Claim 1 of the '420 patent is directed to the combination of the trocar and the clip applier, each component having defined limitations. Claim 1 is the only '420 patent claim in suit:

1. In combination:
   a) a trocar having a cannula, and valve means for sealing said cannula, said cannula being adapted for entry into a body cavity;
   b) an endoscopic clip applier having:
   i) a frame;
   ii) an endoscopic portion defining a longitudinal axis and extending distally from said frame, said endoscopic portion being insertable into said cannula through said valve means in sealing engagement therewith, said endoscopic portion further including a plurality of surgical clips disposed in an array and clip closing means for sequentially closing said surgical clips; and
   iii) seal means associated and adapted to cooperate with at least one of said

endoscopic portion and said frame to obstruct passage of gaseous media from the body cavity.

Claim 1, the broadest claim of the '057 patent, also describes the endoscopic apparatus as comprising several elements. The claim elements are defined in terms of their function, as provided in 35 U.S.C. § 112 ¶ 6:

1. An apparatus for endoscopic application of surgical clips to body tissue which comprises:
   a) frame means;
   b) endoscopic means connected to said frame means of generally elongated configuration and extending distally from said frame means and including:
   i) means for storing a plurality of surgical clips;
   ii) means for individually advancing said clips to the distal portion of said endoscopic means for positioning adjacent the body tissue to be clipped;
   iii) means for at least partially closing said clip at least sufficient to grip the body tissue after the clip has been advanced distally to said distal portion of said endoscopic means; and
   iv) gaseous sealing means.

Claim 2 of the '057 patent specifies the use of silicon grease as the gaseous sealing means of clause iv, and claim 7 is directed to a disposable device as in claim 1.

Ethicon's defense that the claims are invalid for obviousness was based on the ground that U.S. Surgical had merely adapted to endoscopic use its own, prior art multiple clip applier, the Premium Surgiclip of the '226 patent, by known and routine adaptation.

Thus Ethicon presented evidence and argument that U.S. Surgical had simply elongated the body of its prior art multiple clip applier so that it could be used through a trocar, with a sealing means to prevent escape of the insufflating gas through the trocar. Ethicon adduced extensive evidence that such adaptation was well known to persons of ordinary skill in the field of endoscopic instruments. U.S. Surgical countered with evidence and argument to the contrary.

The jury held, by special verdicts, that the claims in suit were invalid for obviousness. On appellate review we determine whether, on correct instructions of law, there was substantial evidence whereby a reasonable jury could have reached the verdict reached by this jury. *See Litton Sys., Inc. v. Honeywell, Inc.,* 87 F.3d 1559, 1566, 39 USPQ2d 1321, 1324 (Fed.Cir.1996) ("Substantial evidence describes that minimum quantum of evidence from which a jury might reasonably afford relief."); *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,* 72 F.3d 857, 862, 37 USPQ2d 1161, 1163 (Fed. Cir.1995) ("Substantial evidence is such relevant evidence, on the record as a whole, as could be accepted by a reasonable mind as adequate to support the verdict.") Conflicting evidence and argument must be viewed as resolved favorably to the party in whose favor the jury found. The reviewing court must give appropriate deference to the jury's choices in weighing the evidence, in deciding between opposing positions, and in drawing factual inferences. *Richardson v. Suzuki Motor Co.,* 868 F.2d 1226, 9 USPQ2d 1913 (Fed.Cir.1989) (" 'the appellate court's function is exhausted when that evidentiary basis [of the jury's verdict] becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable.' ") (quoting *Lavender v. Kurn,* 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916 (1946)); *Medtronic, Inc. v. Intermedics, Inc.,* 799 F.2d 734, 742, 230 USPQ 641, 646 (Fed.Cir.1986), *cert. denied,* 479 U.S. 1033, 107 S.Ct. 882, 93 L.Ed.2d 836 (1987).

### The Prior Art

As we have remarked, Ethicon's position was that U.S. Surgical had simply elongated its prior art multiple ligating instrument so that it could be inserted through a trocar, and used known endoscopic sealing mechanisms to inhibit escape of the insufflating gas through the trocar. Expert witnesses testified that these modifications were well known to persons of ordinary skill in the art of endoscopic instruments. The witnesses presented several prior art patents, and exhibited many actual instruments, all having the common endoscopic characteristics of an elongated body and sealable engagement with the trocar.

The district court mentioned, in the opinion accompanying the denial of post-trial motions, that U.S. Surgical's technical expert testified that there were approximately forty different prior art multiple clip appliers for conventional open surgery. He testified that at least four of them—the Premium Surgiclip of the '226 patent and the multiple clip appliers shown in the Montgomery patent, the Peters patent, and the Lachakar patent—embodied all of the elements of the '420/'057 claims except for the elongated body and sealing means. He testified that an elongated body and sealing means are characteristics of all endoscopic surgical instruments. In evidence were a variety of actual instruments for endoscopic surgery, all having these characteristics. These endoscopic instruments included graspers, scissors, dissectors, and single clip appliers. All had an elongated body and were adapted for sealing engagement with the trocar.

Also in evidence were references describing prior endoscopic devices for the application of multiple fasteners other than ligating clips. U.S. Patent No. 3,870,048 to Yoon showed an applier for multiple elastic rings for ligating fallopian tubes, stating that "[i]t is possible to load suture ring clips within the applicator in end-to-end series fashion.... This permits a number of clips to be applied during a procedure without the need of having to withdraw the applicator from the surgical field in order to load another clip into the applicator." U.S. Patent No. 4,226,239 to Polk also showed an instrument for endoscopic application of multiple ligating rings. The prior art also included at least one endo-

scopic multiple staple applier, Patent No. 4,944,443 to Oddsen. All of the endoscopic instruments for applying multiple fasteners had the common characteristics of elongation for use through a trocar, and most were sealed against escape of the gas through the trocar. Several references showed the use of silicon grease, as specified in claim 2 of the '057 patent, or valves, as specified in claim 1 of the '420 patent, to maintain the seal.

The testimony of U.S. Surgical's technical expert that the elongated body and the seal are common characteristics of endoscopic instruments was described by Ethicon as a concession of great weight. This evidence was stressed at trial, as Ethicon pressed its argument that U.S. Surgical had simply adapted its '226 patent multiple clip applier for endoscopic use, and that it was obvious to do so, pointing to many other instruments that had been adapted in the same way. U.S. Surgical points out that this same expert and several other expert witnesses testified about the difficulties of designing the '420/'057 endoscopic multiple clip applier

and the time and cost involved. We take note of the conflicting testimony and the opposing expert opinions of witnesses for these parties, and of the lengthy explorations by these witnesses of this technology and the development and characteristics of these surgical instruments.

In comparing the '420/'057 instruments with the prior art instruments, Ethicon's patent expert testified that the prior art '226 patent was the closest prior art and that the relevant elements of the structure of the '226 patent "were adopted into the subject matter of the '057 and '420 patent applications." Ethicon's technical expert pointed out to the jury all of the similarities of the structure and mechanisms between the device of the '226 patent and the '420/'057 patents. He pointed to the jaws to hold the clip, the pusher for advancing a stored clip to the jaws, the grooves in the face of the jaws to receive the clip, and the mechanism for closing the clip about the tissue to be ligated. The drawings of the jaws in the '226 patent and in the '420/'057 patents show this similarity:

Fig. 9 of '226 Patent

FIG. 19a

Fig. 19a of '420 Patent

Witnesses testified that the operation of the '226 instrument and the '420/'057 patents was essentially the same. It was explained that in both the '226 and the '420/'057 instruments the jaw blade, clip carrier, and pusher bar are all enclosed in a channel assembly from which the jaws protrude at the end. In the '226 patent the applicator is described in the Abstract as:

The surgical clip applicator has a pusher bar which positions the foremost clip from a clip carrier into a ready-to-fire position between the jaws prior to squeezing of the

handles together. When the applicator is fired, the previously positioned surgical clip can be crimped about a vessel and when the jaws are released, a new clip is placed between the jaws for the next firing. A channel assembly moves over the jaws to close the jaws while the pusher bar is retracted into the clip carrier for delivering the foremost clip from the carrier upon release of the handles.

Referring to Fig. 4 of the '226 patent, it was explained at trial that the pusher bar (35) moves a clip (33) into the channels in the

faces of the jaws (25). When a clip is in the jaws and the handles are closed, the external channel (38) moves forward over the beveled portion of the jaws, which, by virtue of their beveled shape, are squeezed together by the external channel, thus closing the clip. At the same time, the pusher bar moves back to engage the next clip in line. When the handle is released the channel withdraws, the jaws open and release the clipped tissue, and the pusher bar moves forward, positioning the next clip into the jaws. The operating components are shown in the patent as follows:

Fig. 4 of '226 Patent

In the '226 patent the clip carrier is described as "an elongated channel having a pair of side walls or rails between which the clips are slidably guided, a pusher which slides between the rails, and a spring for biasing the pusher in the forward direction." Col. 4, lines 45–54. The corresponding assembly, shown in Fig. 18 of the '420 patent, was the subject of comparative testimony:

**FIG. 18**

Fig. 18 of '420 Patent

It was explained that the pusher bar (143) moves a ligating clip (138) into the channels in the faces of the jaws (135–b). When a clip is in the jaws and the handles are closed, the external channel (133) moves forward over the beveled portion of the jaws, squeezing them together and closing the clip.

To counter this evidence of similarity, U.S. Surgical witnesses testified that the '420/'057 instrument was not a routine adaptation of a prior instrument, and stressed the long development time and engineering difficulties involved in the conversion of the '226 device to endoscopic use. Ethicon challenged these arguments and their factual basis on cross-examination, and elicited testimony that the development time related primarily to unclaimed features of the handle.

There was testimony about the seal and how it was achieved. In its infringement case U.S. Surgical argued that "valve means" in the '420 patent included any known means for sealing the clip applier in the trocar, including valves and gaskets. U.S. Surgical argued at trial as stated in its proposed jury instruction construing this term for infringement purposes:

> The structure for performing this [valve means] function includes all such structures contained in trocars known in the art

at the time the '420 Patent Application was filed.

U.S. Surgical presented testimony to this effect at trial, thus providing substantial basis for the jury to find that the "valve means" of the '420 patent was known in the prior art. U.S. Surgical does not now dispute that the "valve means" of its '420 patent is found in prior art endoscopic instruments.

In the course of the extensive explanation and comparisons at trial of the prior art devices and the '420/'057 devices, there was no dispute concerning the content of the references or the structures that they described. There was no dispute concerning the structures described in the '420/'057 patents, or concerning the meaning of technical terms or words of art as used in the prior art or in the patents in suit. The jury was instructed that the technical terms had their plain meaning, as the district court mentioned in its opinion on the post-trial motions. U.S. Surgical did not proffer a particular "construction" of technical terms in order to distinguish the claimed inventions from prior art devices. Neither party departed from the plain meaning of the words that were used in the claims and in the specifications, and in the prior art. Although U.S. Surgical has raised on this appeal the issue of "claim construction," as we shall discuss *post*, there

was no argument at trial as to the meaning of technical terms or words of art insofar as they concern the determination of obviousness.

There was opinion evidence on both sides of the question of obviousness. We turn to the objective factors, for as the district court instructed the jury, such evidence must be considered in the determination of obviousness:

### Objective Factors

Objective factors assist in understanding how the invention was viewed in its field of endeavor, and provide an important practical guide to the decisionmaker. It was explained to the jury that the context in which the invention arose and its reception in the marketplace are indicia of unobviousness, and must be considered.

Witnesses for U.S. Surgical testified that the EndoClip, a commercial embodiment of the '420/'057 patents, had revolutionized endoscopic surgery and made endoscopic gall bladder removal possible. Its commercial success was emphasized, and it was stressed that the EndoClip was the first and for some years the only endoscopic multiple clip applier on the market. U.S. Surgical pointed out that the most relevant prior art, *viz.* single clip appliers for endoscopic surgery and multiple clip appliers for open surgery, had existed for more than a decade before U.S. Surgical produced the EndoClip for endoscopic surgery. U.S. Surgical presented evidence of the rapid acceptance and adoption of new endoscopic procedures, based on its new multiple clip applier.

Witnesses for Ethicon testified that the growth of endoscopic surgery was due to the miniature video camera, not the multiple clip applier. They testified that before a tiny camera was available to televise images of the abdominal cavity, whereby a team of surgeons could operate with a common view of the surgical field, endoscopic surgery was largely limited to ligation of fallopian tubes, a simple procedure performed by a surgeon peering through an eyepiece. According to Ethicon, U.S. Surgical's EndoClip was developed for and had its only use for tubal ligation, and its later commercial growth was due to the sheer luck of being on the market

when endoscopic surgery underwent its rapid expansion upon the capability of televising from inside the body.

Thus U.S. Surgical characterized its '420/'057 multiple clip applier as a pioneering advance in the field of endoscopic surgery, while Ethicon described the '420/'057 instrument as an obvious adaptation of a prior art multiple clip applier, whose commercial success was due to unrelated factors. These conflicting arguments were fully presented at trial. Witnesses, including surgeons, supported both sides. The jury was presented with questions of credibility and weight as well as factual disputes, as the jury decided whether the inventions of the claims in suit would have been obvious to a person of ordinary skill in the field of the invention at the time the invention was made. Although there were indeed questions of credibility and weight of evidence, the jury was not required to choose between alternative meanings of technical terms or words of art, or decide the scope of the claims, in deciding the question of obviousness. The factual findings of the scope and content of the prior art, the differences between the prior art and the claimed invention, the level of ordinary skill in the field of the invention, and the objective considerations, did not require "construction" of these claims as set forth in the *Markman* decisions of the Federal Circuit and the Supreme Court.

■ In reviewing the jury verdict of obviousness, we review whether the jury was correctly instructed on the law, and whether there was substantial evidence whereby a reasonable jury could have reached its verdict upon application of the correct law to the facts, *Railroad Dynamics, Inc. v. A. Stucki Co.,* 727 F.2d 1506, 1512, 220 USPQ 929, 935–36 (Fed.Cir.), *cert. denied,* 469 U.S. 871, 105 S.Ct. 220, 83 L.Ed.2d 150 (1984), recognizing that invalidity must be proved by clear and convincing evidence. *Perkin–Elmer Corp. v. Computervision Corp.,* 732 F.2d 888, 893, 221 USPQ 669, 673 (Fed.Cir.1984). Thus we turn to the law, as presented at trial and as instructed by the trial judge.

### The Jury Instructions

■ Jury instructions are reviewed for correctness, with due attention to their clarity, objectivity, and adequacy, taken as a whole. *See Brooktree Corp. v. Advanced Micro Devices, Inc.,* 977 F.2d 1555, 1570, 24 USPQ2d 1401, 1411 (Fed.Cir.1992) ("The correctness of a jury instruction ... is reviewed on appeal to determine whether, on the whole, the jury instructions were adequate to ensure that the jury fully understood the legal issues for each element of the case."); *Trademark Research Corp. v. Maxwell Online, Inc.,* 995 F.2d 326, 339 (2d Cir.1993) ("A trial court's improper charge constitutes reversible error only 'when jury instructions, taken as a whole, give the jury a misleading impression or inadequate understanding of the law.' ") (quoting *Carvel Corp. v. Diversified Management Group, Inc.,* 930 F.2d 228, 232 (2d Cir.1991)).

■ The jury was correctly instructed on the presumption of validity, and that Ethicon bore the burden of proving invalidity by clear and convincing evidence. The jury was correctly instructed that in determining whether the inventions of the '420 and '057 patents were invalid based on obviousness, it was necessary to consider the scope and content of the prior art, the differences between the prior art and the claimed invention, the level of ordinary skill in the art, and the objective criteria of unobviousness. The court correctly explained the *Graham* factors. *See Graham v. John Deere Co.,* 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545, 148 USPQ 459 (1966). For example, in determining the level of ordinary skill in the art the jury was instructed to consider evidence submitted by the parties to show:

> One, the educational level of active workers in the field;
>
> Two, the types of problems encountered in the art;
>
> Three, the nature of the prior art solutions to those problems;
>
> Four, the activities of others;
>
> Five, the rapidity with which innovations are made in the art;
>
> And six, the sophistication of the technology involved.

■ The jury instructions included explanation of the principles to be applied in determining obviousness when the invention is a combination of prior art components. The court instructed that the prior art must show not only all of the elements of the claimed combination, but must contain some "teaching, suggestion or incentive" to a person of ordinary skill to combine the known elements in the way that U.S. Surgical combined them:

> In order to prove obviousness, the defendants must prove, again by clear and convincing evidence, that one of ordinary skill in the art would have found in the prior art references some teaching, suggestion or incentive to combine the prior art references in the way that U.S. Surgical did in its invention.

The jury instructions stressed that the prior art, to be invalidating, must sufficiently teach or direct a person of ordinary skill how to obtain the result reached by the patentee:

> Additionally, if you do find a teaching in the prior art that would motivate one of ordinary skill in the prior art to make the clip applier claimed in the '057 and '420 patents, you must also determine whether there was sufficient teaching or direction in the prior art of how to obtain or build the claimed clip applier such that a person of ordinary skill in the art would have a reasonable likelihood of success in making the invention. In other words, in order to find obviousness, you must find not only that the prior art would teach one of ordinary skill to try the combination of known elements, but also that the prior art would sufficiently teach or direct one of ordinary skill how to obtain the desired result.

The jury was instructed that in determining obviousness it was to consider the claim as a whole, and that it did not suffice if the individual elements of the invention were known in the prior art:

> The reason you must consider the claim as a whole is because there is no dispute that U.S. Surgical's invention is comprised of individual elements which were known in the prior art. The fact that U.S. Surgical's inventions incorporate or combine elements already known in the prior art does

not render its patents invalid. Patents can be granted on devices that contain a combination of various elements that are well known in the prior art. U.S. Surgical's claim is that it invented the combination of those elements for the first time in the endoscopic multiple clip applier claimed in the patents in suit.

The instructions on the law of obviousness occupied eight pages of trial transcript. They were correct in law, thorough, and clearly stated. U.S. Surgical now argues that other instructions that it requested should also have been given, and that their omission requires a new trial. The district court explained its denial of these requests in its opinion on the post-trial motions.

■■■ U.S. Surgical had requested that the court read to the jury the sentence of 35 U.S.C. § 103(a) that states: "Patentability shall not be negatived by the manner in which the invention was made," accompanied by the instruction that the jury should give no weight to Ethicon's evidence of "how long or short a time it took to make [the invention]" and "how obvious U.S. Surgical's invention may have seemed to U.S. Surgical's own inventors." The court denied the request. We do not discern reversible error in this denial, for the rejected instruction was encompassed in the instructions that were given, was the subject of expert testimony, and was included in the argument. The court did not commit error in denying an instruction that gave weight to one of the several aspects that were before the jury, and was reasonably viewed as cumulative in the context of the instructions that were given.

U.S. Surgical also requested an instruction that the '226 patent was cumulative prior art and thus did not have to be cited to the patent examiner. In its pre-trial consideration of the issue of inequitable conduct the court, through a special master, had concluded that the '226 patent was cumulative in the circumstances and on the law that then applied in the examination of patents. Whatever the relevance of this point to the issue of inequitable conduct, which had been decided in favor of U.S. Surgical, the '226 patent was correctly treated as prior art in this litiga-

tion. The denial of this instruction is not grounds for a new trial.

■■■ U.S. Surgical also requested the instruction that even if the jury found the absence of the secondary consideration of long-felt need, that was "in no way suggestive of obviousness or invalidity." The instruction that was given on the secondary considerations was:

In making these three determinations [the *Graham* factors] you must also consider other surrounding circumstances which are called secondary considerations. These include:

One, whether the alleged invention was commercially successful;

Two, whether the alleged invention satisfied a long-felt need in the art;

Three, whether others were unsuccessful in making the alleged invention;

Four, whether the alleged invention was copied by others in the art;

Five, whether the alleged invention received praise from others in the art;

Six, whether the alleged invention departed from other principles of the art.

In order to determine that secondary considerations such as commercial success are evidence of non-obviousness, there must be a causal connection between the patented features of the invention and the commercial success of the device. If commercial success is attributable to the patented features, then it is evidence of non-obviousness.

U.S. Surgical's requested instruction concerning long-felt need related to the weight to be given to a fact whose existence, and significance, was disputed at trial. The issue of the objective factors was complex and hard-fought at trial, leaving areas of dispute, weight, and perhaps credibility. We discern no error in the court's refusal to comment on a specific aspect, having instructed the jury on all aspects.

■■■ U.S. Surgical also requested the instruction that prior art that teaches away from the patented invention is evidence of nonobviousness. That subject was comprehended in the above-quoted instruction that

the jury should consider "Six, whether the alleged invention departed from other principles of the art," an argument whose substance had been debated at trial. The refusal of this instruction, in light of the full instructions that were given, is not grounds for a new trial.

■ U.S. Surgical also states that the district court should have given a curative instruction to counter Ethicon's suggestion that the patents in suit improperly hindered competition. The record shows Ethicon's persistent and improper innuendos. However, U.S. Surgical reasonably countered this aspect with evidence and argument concerning the purpose of the patent system. Review of the record leads us to conclude, as apparently did the district court, that this tactic did not prejudice the outcome. *See City of New York v. Pullman, Inc.*, 662 F.2d 910, 917 (2d Cir.1981) ("The district court is not obliged to charge every contention made by the parties at trial, as long as the charge itself, taken as a whole, is fundamentally fair.") (citations omitted), *cert. denied*, 454 U.S. 1164, 102 S.Ct. 1038, 71 L.Ed.2d 320 (1982). The denial of these instructions (and others offered by both sides) was not a miscarriage of justice, and does not establish reversible error or grounds for a new trial.

U.S. Surgical also argued that its requested instructions construing the claims should have been given, and that the absence of "claim construction" by the district court required a new trial. In accordance with the Court's remand for further consideration in light of *Markman*, we have again reviewed the requested instructions to determine whether any instructions that were improperly refused could reasonably have prejudiced the jury's verdict of invalidity.

In evaluating the refused instructions, we look first at the instructions on claim construction that were given. The issue was interpretation of these means-plus-function claims and their application to find if there was infringement by the Ethicon devices. The district court instructed the jury how to interpret means-plus-function claim elements, and how to apply these claim elements to the accused devices, as follows:

Now, in interpreting the means plus function claim elements, you must determine the following:

One, what function is called for by the claim element, and

Two, what structure, or means, is described in the patent specifications for performing the stated function.

A means plus function claim is only infringed if:

One, the function of the accused device is identical to the function disclosed in the claim element of the patent; and

Two, the structure which performs that function in the accused device is the same as, or the equivalent of, the structure described in the patent specifications.

The second of these two steps requires you to determine whether the accused device includes the same structure as described in the patent or its equivalent. You may determine that a structure in the Ethicon device is equivalent if you determine that a person of ordinary skill in the art would consider the structure found in the accused device an insubstantial change from the structure disclosed in the patent specification.

This aspect did not concern, or determine, validity in this case. However, U.S. Surgical states that *Markman* requires the trial judge to perform the first portion of this instruction, that is, to determine the function and the structure or means that performs the function, and to give a detailed technical analysis for the infringement portion of the instruction; and that failure to do so fatally flawed the trial.

For example, U.S. Surgical requested instructions for the first element of claim 1 of the '057 patent, starting with the following proposed claim construction:

Clause i) of claim element 1b) reads "means for storing a plurality of surgical clips." This is a means-plus-function claim element. The stated function, as I interpret it, is to store a plurality of surgical clips.

We observe that this part of the proposed claim construction merely repeats the words of the claim. The requested instruction then

told the jury what structure was described in the patent specification for performing this function:

> The structure or means disclosed in the patent specification for performing this function is a clip track which holds an array of surgical clips and a spring to bias the clips toward the distal or far end of the instrument.

This information from the specification resolved no dispute, for there was none. Next, the requested instruction told the jury how to find infringement: the same instruction as in the general jury instruction that was actually given, quoted *supra*, but now drawn specifically to this claim element:

> In order to find that this claim element of the '057 patent has been met, you must first find that defendants' accused devices perform the function of storing a plurality of clips. Then you must find that the defendants' accused devices have a clip track which holds an array of surgical clips and a spring to bias the clips toward the distal or far end of the instrument, or equivalent structure, which performs this function.

This text, again, repeated the function in the same words as in the claim, and repeated the undisputed description in the specification. The requested instruction then stated that if the accused devices perform this function, using the described means or an equivalent means, there is infringement. That is the same instruction as in the general instruction that was actually given, but made specific to this claim element. We doubt that *Markman* requires the trial judge to instruct as to an undisputed "claim construction" for every term, by simply parroting the words of the claim and then repeating the rule concerning infringement of means-plus-function claims. *Markman* explicitly recognized that the application of the claim to the accused device was for the jury. Indeed, Ethicon objected to this instruction as an improper attempt to direct the jury findings of infringement.

Similar instructions were proffered for the other claim elements. Another rejected instruction started with a similar repetition of the words of the claim as "interpreted" by the judge, and an undisputed restatement of what these words mean:

> The final clause of claim element b) ii) calls for "clip closing means for sequentially closing said surgical clips." This is a means-plus-function claim element. The stated function of this particular means-plus-function claim element is "sequentially closing said surgical clips." I interpret this to mean the closing of surgical clips one at a time and one after the other.

In the infringement trial, the issue was not the definition of "sequentially," but the equivalency of the means that was described in the specification with the means that was used in the accused device, and issues concerning the clip advancing means. These aspects do not relate to obviousness, but to infringement. The additional text of this proposed instruction was objected to on its merits by Ethicon as an incorrect application of the law of 35 U.S.C. § 112 ¶ 6. However, this aspect raised no disputed issues with respect to the determination of obviousness in view of the prior art. The dispute concerning the requested instructions related not to the prior art, but to the accused Ethicon devices.

Following is another claim element whose proffered "interpretation" was to repeat the words of the claim:

> Claim element a) calls for a trocar having a cannula with valve means for sealing the cannula. The claim element "valve means for sealing said cannula" is a means-plus-function claim element. The stated function, as I interpret it, is to seal the cannula.

There were infringement disputes concerning the valve means, and there was much debate at trial concerning the scope of this claim element as applied to Ethicon's devices. U.S. Surgical requested the instruction that the "valve means" includes and is infringed by all prior art valves and gaskets and any other known structures for sealing the cannula:

> The structure for performing this function includes all such structures contained in trocars known in the art at the time the '420 Patent Application was filed. Such trocars contain structures both to seal the cannula when no instrument is in

the cannula, such as a flapper-type valve, and structures which form a seal between the instrument and the cannula when an instrument is inserted in the cannula, such as a gasket. The flapper valve may engage the gasket, as in the U.S. Surgical Surgiport Trocar, or be separate from the gasket, as in reusable instruments that were known at the time the '420 Patent Application was filed. Therefore, if you find that the Ethicon Endopath Trocar is a trocar having the same or equivalent structure to the structures I have just described, then the accused devices satisfy claim element a) of Claim 1 of the '420 Patent.

We referred *supra* to this requested instruction, for it makes clear that validity of the U.S. Surgical patents was not grounded on asserted unobviousness of the valve means, and that a reasonable jury could have so found. The district court had left to the jury the issue of breadth of the valve means as it affected infringement, for Ethicon had vigorously objected to this instruction as prejudging the finding of infringement. In his post-trial opinion, the district judge expressed the view that the jury had accepted U.S. Surgical's construction of the valve means since it found infringement of the '420 patent claim. We do not reach the issue of infringement. However, whether the valve means was construed as broadly as U.S. Surgical requested, or quite narrowly as Ethicon had argued, the variety of valve structures shown in the prior art was in accordance with the jury's finding of obviousness in light of the prior art.

■ The *Markman* decisions do not hold that the trial judge must repeat or restate every claim term in order to comply with the ruling that claim construction is for the court. Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement. It is not an obligatory exercise in redundancy. Although claim construction may occasionally be necessary in obviousness determinations, when the meaning or scope of technical terms and words of art is unclear and in dispute and requires resolution in order to determine obviousness, in this case

none of these rejected instructions was directed to, or has been shown reasonably to affect, the determination of obviousness.

Grounds for a new trial have not been shown. *See Santa Maria v. Metro–North Commuter R.R.,* 81 F.3d 265, 273 (2d Cir. 1996) ("A new trial must be granted if the court determines that 'the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving.'") (quoting *Montgomery Ward & Co. v. Duncan,* 311 U.S. 243, 251, 61 S.Ct. 189, 194, 85 L.Ed. 147 (1940)); *Shatterproof Glass Corp. v. Libbey–Owens Ford Co.,* 758 F.2d 613, 626, 225 USPQ 634, 643 (Fed.Cir.1985) ("If prejudicial error occurred, or if the verdict is against the clear weight of the evidence, as an alternative to judgment n.o.v. a new trial may be granted, in the discretion of the trial judge.") (citing *Fairmount Glass Works v. Cub Fork Coal Co.,* 287 U.S. 474, 53 S.Ct. 252, 77 L.Ed. 439 (1933)).

■ We have not been shown prejudicial error in the jury instructions, or that the verdict of obviousness is against the clear weight of the evidence, or that substantial justice requires that the trial be voided.

### The Dictionary

■ During its deliberations the jury requested a dictionary and, over the objections of both parties, was provided one by the court. U.S. Surgical states this is reversible error, while Ethicon states that any error was harmless.

U.S. Surgical proposes that the jury might have used the dictionary to look up definitions on which it had been instructed by the court or that had been explained by witnesses, such as "presumption" or "obviousness." The jury was instructed, as the parties agreed, to consider the ordinary meaning of the language used in the claims. U.S. Surgical does not mention any terms that were used outside of their ordinary meaning. The district court pointed out in its post-trial opinion that the instruction to consider the ordinary meaning, and the general assumption that definitions in a standard dictionary are common knowledge with which the jury

is charged, support the provision of the dictionary.

It is generally agreed that the provision of a dictionary to a jury, although not favored, is not grounds for a new trial. *See Wernsing v. General Motors Corp.,* 298 Md. 406, 470 A.2d 802, 806 (1984) ("It appears to be the near universal consensus that a new trial is not awarded simply because a dictionary was before the jury.") (citing cases). U.S. Surgical offered no specifics as to words whose dictionary definitions may have adversely affected the verdict of obviousness. Instead, U.S. Surgical seeks a presumption of prejudice and an automatic new trial.

Both sides cite *United States v. Weiss,* 752 F.2d 777 (2d Cir.1985), as stating the controlling law in the Second Circuit, and each side argues that *Weiss* supports its position. In *Weiss* a criminal defendant was convicted of mail fraud, perjury, and RICO violations, and the jury obtained accounting books without the judge's knowledge or consent. Although the Second Circuit stated that "extra-record information that comes to the attention of a juror is presumptively prejudicial," 752 F.2d at 782–83, the court held that the trial judge's determination that the information had not prejudiced the defendant was not an abuse of discretion, and sustained the conviction.

U.S. Surgical argues that the practice of permitting the jury to have a dictionary would undermine the patentee's right to be its own lexicographer, and thus constitutes reversible error. However, U.S. Surgical does not direct us to any actual or reasonably possible prejudice, or any suggestion that the jury disregarded the court's instructions on the law of obviousness, or the plain meaning of the terms used in the claims and the prior art. Instead, U.S. Surgical argues that it was Ethicon's burden to establish that the jury did not misuse the dictionary, and that since that burden can not be met a new trial is required. However, the holding in *Weiss* was not for an automatic new trial. *Weiss* did not divest the trial judge of authority to decide whether the error, in that case viewed as juror misconduct, was in fact prejudicial.

The district court did not commit prejudicial error by providing the dictionary. A new trial on this ground is not warranted.

### *The Post–Trial Motions*

Upon post-trial motions the district court, in a 34–page opinion, discussed validity and infringement. With respect to validity the court discussed the positions of the parties on the teachings of the prior art, the differences between the prior art and the patented inventions, and how the inventions as a whole would have been viewed by a person of ordinary skill in that art.

The district court summarized the evidence that the prior art would have suggested the combination claimed in the '420 patent. The court referred to Ethicon's position that U.S. Surgical had adapted its own multiple clip applier to endoscopic use, and the testimony that the only significant difference from the prior art multiple clip applier was the elongation of the shaft and the seal, and that these were common to all endoscopic instruments.

The district court explained its conclusion that there was substantial evidence in support of the jury verdict of obviousness of the claims in suit. The court also explained its conclusion that the requirements of a new trial had not been met: that the verdict was not against the weight of evidence, that there was not a miscarriage of justice or prejudicial error during trial, or a seriously erroneous result.

### *The Motion Upon Remand*

Following the remand from the Supreme Court to the Federal Circuit, U.S. Surgical moved this court to vacate the district court's judgment and order a new trial, on the ground that since the district court had not construed the claims as required by *Markman,* either before or after the jury rendered its verdicts, there is nothing for the Federal Circuit to review on appeal. U.S. Surgical states that it is entitled to a new trial of all issues of validity and infringement except for the verdicts in its favor (infringement of the '420 patent and that there was not inequitable conduct) for which Ethicon did not petition for *certiorari.*

Ethicon, opposing the motion, points out that the district court, in its opinion on the post-trial motions, discussed the claim construction that the jury necessarily adopted on the two aspects of claim scope that were in genuine dispute as applied to the Ethicon devices. Ethicon points out that the district court stated that it agreed with the jury's necessary constructions with respect to the valve means and the clip advancing means, and that the court explained its reasons for sustaining the verdicts based on those constructions. Ethicon points out that under *Markman* this court undertakes to perform any necessary claim construction *de novo*. Ethicon also points out that no disputed claim construction was material to the determination of obviousness.

Concerning U.S. Surgical's proposed instructions on claim construction, as we have discussed, whatever their applicability to the issues of infringement, their omission did not prejudice the issue of obviousness. *Markman* did not hold that the trial judge must always parse the claims for the jury, whether or not there is an issue in material dispute as to the meaning or scope of the claims. Neither this court nor the Supreme Court held that the trial judge must conduct such a rote exercise, on pain of having to retry the case.

Ethicon had objected to the substance of U.S. Surgical's proposed instructions, as well as asserting that they were unnecessary. We need not resolve this issue, for U.S. Surgical has not shown that there are unclear or ambiguous technical terms or words of art or related aspects of claim scope whose "construction" as requested by U.S. Surgical would negate the verdicts of obviousness. The jury was instructed, without objection, that the language of the claims was to have its plain meaning. There was no dispute as to the meaning of technical terms or words of art as used in either the prior art or the claims. The difference between the prior art and the claimed invention is a question of fact, *Graham*, 383 U.S. at 17, 86 S.Ct. at 693–94, 15 L.Ed.2d at 556, 148 USPQ at 467, and was not overruled by the Court's *Markman* decision.

U.S. Surgical argues that if the district court had construed the claims for the jury,

the jury could not have reasonably accepted Ethicon's argument that U.S. Surgical had simply made known endoscopic adjustments in its prior art multiple clip applier. This went to the ultimate question of obviousness, which was decided by the jury upon finding and weighing and evaluating the factual evidence of the *Graham* factors. U.S. Surgical does not explain how any reasonable claim construction that it requested would have deprived the verdict of obviousness of its support. Further, *Markman* does not authorize the trial judge to remove from the jury the factual findings required by *Graham.*

On careful consideration of the substance of the instructions on claim construction that the district court declined to give, and the instructions on the issue of obviousness, all in light of the particular issues in this case concerning the prior art, the claimed invention, and the Court's discussion in *Markman,* we conclude that the omission of the requested instructions did not prejudice the determination of obviousness. The criteria for grant of a new trial have not been met. *See Santa Maria,* 81 F.3d at 273; *Shatterproof Glass,* 758 F.2d at 626, 225 USPQ at 643 (new trial appropriate when there was prejudicial error, or when verdict against weight of the evidence).

### Conclusion

On review of the proceedings at trial, we conclude that there was substantial evidence from which a reasonable jury could have held that the claimed subject matter would have been obvious to a person of ordinary skill in this field at the time the invention was made. The judgment of invalidity is affirmed.

The case was vigorously litigated, with extensive testimony, physical exhibits, and argument. We have been directed to no unfairness or incompleteness or prejudice in the jury instructions with respect to obviousness. A new trial was properly denied.

### Costs

Costs to Ethicon.

*AFFIRMED; MOTION FOR NEW TRIAL DENIED.*