# United States Court of Appeals for the Federal Circuit

———————————

**ARLINGTON INDUSTRIES, INC.,**
*Plaintiff-Appellee,*

**v.**

**BRIDGEPORT FITTINGS, INC.,**
*Defendant-Appellant.*

———————————

2013-1357

———————————

Appeal from the United States District Court for the Middle District of Pennsylvania in No. 02-CV-0134, Senior Judge A. Richard Caputo.

———————————

Decided: July 17, 2014

———————————

KATHRYN L. CLUNE, Crowell & Moring LLP, of Washington, DC, argued for plaintiff-appellee. With her on the brief were AMIR D. KATZ; and JACOB Z. ZAMBRZYCKI, of San Francisco, California. Of counsel on the brief were CARTER G. PHILLIPS and RACHEL H. TOWNSEND, Sidley Austin, LLP, of Washington, DC. Of counsel was SCOTT BITTMAN, Crowell & Moring, LLP, of New York, New York and ERIC SHUMSKY, Orrick, Herrington & Sutcliffe LLP, of Washington, DC.

ALAN M. ANDERSON, Alan Anderson Law Firm LLC, of Minneapolis, Minnesota, argued for defendant-appellant.

With him on the brief were MATTHEW R. PALEN and AARON C. NYQUIST.

————————————

Before CHEN, CLEVENGER, and HUGHES, *Circuit Judges.*

HUGHES, *Circuit Judge.*

Arlington Industries, Inc. owns U.S. Patent No. 6,335,488, which claims a method for connecting electrical cables to a junction box using electrical fittings. Both Arlington and Bridgeport Fittings, Inc. manufacture and sell electrical connectors. After Arlington sued Bridgeport in 2004, the parties entered into a settlement agreement under which Bridgeport agreed to be enjoined from making and selling certain products and their "colorable imitations." Bridgeport then redesigned its electrical connectors, and Arlington sought a contempt order holding that these redesigned connectors violated the original agreement. The district court entered an order finding Bridgeport in contempt of the original injunction, but at the time of appeal, had not yet determined any sanctions for Bridgeport's contempt. Bridgeport appeals the contempt order. Because the contempt order is not a final judgment or otherwise appealable, we dismiss this appeal for lack of jurisdiction.

I

Arlington manufactured and sold a family of electrical connectors that could be snapped into place, including the Snap²It® brand connectors. Bridgeport sold a competing line of quick-connect fittings called Snap-In™ and Speed-Snap™ connectors.

In March 2001, Arlington brought an action against Bridgeport's entire line of Snap-In™ connectors, including

the 590-DCS and 590-DCSI Speed-Snap™ connectors, alleging infringement of Arlington's U.S. Patent Nos. 5,266,050 and 5,171,164.[1] Then, in January 2002, Arlington filed the action-at-issue, alleging that Bridgeport's connectors also infringed claim 1 of the '488 patent.

In April 2004, Bridgeport signed a settlement agreement stating that the '488 patent was not invalid, was not unenforceable, and was infringed by Bridgeport's 590-DCS and 590-DCSI Speed-Snap™ products (collectively, Old Connectors). In the settlement, Bridgeport also agreed to be "permanently enjoined from directly or indirectly making, using, selling, offering for sale or importing . . . the Speed-Snap™ products identified in this Action as Bridgeport's 590-DCS and 590-DCSI *or any colorable imitations* of such Speed-Snap™ Fittings" (2004 Injunction). J.A. 64 (emphasis added). The district court dismissed the case without prejudice and maintained jurisdiction to enforce the 2004 Injunction.

In late 2005, Bridgeport redesigned its connectors to have a frustoconical leading edge. Bridgeport began selling its frustoconical connectors, including the 38ASP and 380SP connectors (collectively, New Connectors), under the Whipper-Snap® brand.

In February 2012, Arlington filed a motion for contempt, alleging that Bridgeport's New Connectors violated the 2004 Injunction. The district court held four days of

---

[1]    The at-issue patent, i.e., the '488 patent, lists the '164 patent as a cited reference. *See* '488 Patent. The '050 patent is a continuation of the '164 patent and a sibling of U.S. Patent No. 5,373,106, which the '488 patent incorporates by reference. *See* '488 Patent col. 4 ll. 6–10; *see also* '050 Patent; J.A. 23–24.

hearings before issuing its contempt order and memorandum.

The district court acknowledged that the parties' dispute centered around two limitations of claim 1 of the '488 patent, and construed those limitations in its memorandum and contempt order. Additionally, the district court found by clear and convincing evidence that the New Connectors met the limitations of claim 1 of the '488 patent and, thus, that Bridgeport directly and indirectly infringed the '488 patent.

Because it found the New Connectors not more than colorably different from the Old Connectors, the district court determined that Bridgeport had violated the 2004 Injunction and held Bridgeport in contempt. In its contempt order, the district court also expressly enjoined the sale of the New Connectors for the life of the '488 patent (2013 Injunction). The district court did not, however, enter sanctions at that time. Bridgeport appeals the district court's contempt order, the claim constructions, the infringement findings, the scope of the injunction, and the determination that the New Connectors were not more than colorable imitations of the Old Connectors.

II

Under 28 U.S.C. § 1295(a)(1), this court has exclusive jurisdiction of an appeal from a "final decision" of a district court in a case arising under any Act of Congress relating to patents. Section 1292(c) further provides this court with jurisdiction to review certain "interlocutory decisions." *See* 28 U.S.C. § 1292(c) (2012).

"It is axiomatic that the initial inquiry in any appeal is whether the court to which appeal is taken has jurisdiction to hear the appeal." *Entegris, Inc. v. Pall Corp.,* 490 F.3d 1340, 1343 (Fed. Cir. 2007) (quoting *Woodard v. Sage Prods., Inc.,* 818 F.2d 841, 844 (Fed. Cir. 1987) (en banc)). "We apply our own law, rather than regional

circuit law, to questions relating to our own appellate jurisdiction." *Int'l Elec. Tech. Corp. v. Hughes Aircraft Co.,* 476 F.3d 1329, 1330 (Fed. Cir. 2007).

When this court has jurisdiction, it reviews findings of colorable imitation and findings of infringement in contempt proceedings for clear error. *TiVo, Inc. v. EchoStar Corp.*, 646 F.3d 869, 883 (Fed. Cir. 2011) (en banc). Claim construction is an issue of law reviewed de novo. *Lighting Ballast Control LLC v. Philips Elecs. N. Am. Corp.*, 744 F.3d 1272, 1276–77 (Fed. Cir. 2014) (en banc); *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1456 (Fed. Cir. 1998). And, with regard to injunctions, this court reviews a district court's grant or denial and scope of an injunction for abuse of discretion. *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 772 (Fed. Cir. 1993).

## III

In patent cases, 28 U.S.C. §§ 1292(a)(1) and (c)(1) provides for our exclusive jurisdiction over "interlocutory orders of district courts of the United States . . . granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions . . . ." 28 U.S.C. § 1292 (a)(1). And § 1292(c)(2) gives us jurisdiction over "an appeal from a judgment in a civil action for patent infringement which would otherwise be appealable . . . and is final except for an accounting." 28 U.S.C. § 1292(c)(2). Bridgeport argues that we have jurisdiction over its appeal under both § 1292(c)(1) and § 1292(c)(2). Because the district court's order simply interpreted the 2004 Injunction and is not an otherwise final, appealable judgment, we dismiss the appeal for lack of jurisdiction.

## A

We can exercise appellate jurisdiction under § 1292(c)(1) if the injunction has been modified. *Entegris,* 490 F.3d at 1344–45. Thus, we must determine whether

the district court's order constitutes a modification, or is simply an interpretation or clarification. *Id.*

Because this is a question of our own jurisdiction, Federal Circuit law applies. *Id.* ("We follow these rules [regarding whether an order continues an injunction] from the Ninth and First Circuits in this case, not because we are bound to, but because we find them persuasive, and thus, we adopt them as Federal Circuit law."); *Woodard,* 818 F.2d 841 (Federal Circuit law applies to issue of jurisdiction over a denial of an injunction, because "[w]hile in some matters of procedural or substantive law this circuit has concluded that we will follow the law as interpreted by the circuit in which the district court is located, . . . such deference is inappropriate on issues of our own appellate jurisdiction.") (internal citation omitted). Under Federal Circuit law, even when an order does not on its face modify an injunction, we still have jurisdiction over an appeal of that order if it effectively amounts to a modification. *Id.*

This is not the first time that this court has faced this issue. In *Entegris,* an injunction was entered prohibiting the sales of certain products or "any colorable imitation thereof." 490 F.3d at 1342. Following the sale of a new design, the patentee brought a contempt motion, claiming that the new product violated the injunction. The district court agreed, finding that the new design was no more than a colorable imitation of the enjoined product. *Mykrolis Corp. v. Pall Corp.*, No. 03-10392, 2005 WL 81920, at *4 (D. Mass. Apr. 30, 2004).

On appeal, we were required to consider whether the district court's interlocutory contempt order could be immediately appealed pursuant to § 1292(c)(1). We began by observing that the Supreme Court has instructed that

the exception in 1292(a)(1) should be construed narrowly. *Entegris*, 490 F.3d at 1344 (citing *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 84 (1981)).[2]  Then, after noting that the district court's contempt order did not "on its face, modify or continue an injunction," we looked to whether the order "effectively amounts to either a modification or a continuation . . . ."  *Id.*  Explaining that there is a difference between an order "that modifies an injunction and one that clarifies or interprets an injunction," we found that the district court's order was an interpretation and, therefore, not immediately appealable.  *Id.* at 1345.  In reaching that decision, we relied on the district court's clear statement that it was not modifying the original injunction and the district court's finding that the new design "was a 'colorable imitation' of the [enjoined product], which was expressly covered by the original preliminary injunction."  *Id.*

The facts in this case parallel *Entegris*.  And relying on that precedent, we similarly conclude that we lack jurisdiction to consider Bridgeport's appeal because the district court's order simply interpreted or clarified its original 2004 injunction.

The focus of the clarification-or-modification analysis is whether there were changes to the original injunction that "actually altered the legal relationship between the parties."  *Aevoe Corp. v. AE Tech Co.,* 727 F.3d 1375, 1382 (Fed. Cir. 2013); *Motorola, Inc. v. Computer Displays, Int'l, Inc.*, 739 F.2d 1149, 1155 (7th Cir. 1984).  Because clauses of both injunctions are almost identical in wording and are congruent in meaning, the legal relationship between the parties is not altered.

---

[2]  Section 1292(c)(1) provides jurisdiction for our court to review certain interlocutory orders, as described in section 1292(a).

The 2004 Injunction and the 2013 Injunction are directed to the same parties, apply to the same activities, and are in force for the same time period. *Compare* J.A. 64 ¶ 2, *with* J.A. 29–30 ¶ 5. Similarly, the injunctions apply to the same products even though the actual wording in each injunction differs slightly. *Compare* J.A. 64 ¶ 2 ("Speed-Snap™ products identified in this Action as Bridgeport's 590-DCS and 590-DCSI"), *with* J.A. 29–30 ¶ 5 ("Whipper-Snap 380SP and 38ASP model connectors"). Because the 2004 Injunction applies to "any *colorable imitations*" of the Old Connectors, J.A. 64 ¶ 2 (emphasis added), and the district court found that the New Connectors were colorable imitations of the Old Connectors, the district court's express inclusion of the New Connectors in the 2013 Injunction simply clarifies what was already implicit in the 2004 Injunction. *See Aevoe*, 727 F.3d at 1382–83 (determining that the district court's reinsertion of "colorable imitation" language and explicitly naming a previously enjoined party did not alter the legal relationship of the parties and was thus a clarification). Accordingly, because the injunctions cover the same parties, activities, products, and time periods, the slight word differences do not rise to the level of altering the parties' legal relationship.

Bridgeport argues that the 2013 Injunction changed the scope of the 2004 Injunction. For example, Bridgeport points out that the 2004 Injunction was part of a global settlement implicating multiple product and method patents, but the 2013 Injunction relates to a single method patent. Appellant's Br. 26. And, according to Bridgeport, the 2013 Injunction enjoins Bridgeport from selling the New Connectors for any use, not just when used as part of the claimed method. Thus, Bridgeport argues that the district court's broadening of the scope of enjoined behavior alters the legal relationships between the parties.

Contrary to Bridgeport's argument, the 2013 Injunction does not broaden the scope of the 2004 Injunction. In the 2004 Injunction, Bridgeport stipulated to infringement, and agreed to be permanently enjoined from "making, using, selling, offering for sale or importing" the Old Connectors or "any colorable imitations [thereof] during the term of United States Patent No. 6,335,488." J.A. 63–64. Nothing has changed from that to which Bridgeport agreed: In 2004 it agreed to be enjoined from making, using, selling, etc., specific *products* which infringe the *method* of claim 1 of the '488 patent. The 2013 Injunction still enjoins Bridgeport from making, using, selling, etc., what the district court determined to be colorable imitations of *products* that infringe the *method* of claim 1 of the '488 patent. Accordingly, the circumstances surrounding the issuance of the 2013 Injunction did not alter the legal relationships of the parties.

Also, just because the district court construed claim terms for the first time in the 2013 Injunction, it does not necessarily follow that the 2013 Injunction is transformed into a modification of the parties' relationship. Because the 2004 Injunction was the result of a settlement agreement, the district court did not need to analyze infringement and therefore did not need to issue any claim constructions at that time. Later, the district court determined that it needed claim constructions for its analysis and issuance of a contempt order (which includes the 2013 Injunction). J.A. 20–25.

In expressly providing the claim constructions, the district court simply interpreted or clarified the meaning of those claim terms. *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("Claim construction is a matter of . . . clarify[ing] and when necessary . . . explain[ing] what the patentee covered by the claims . . . ."); *see generally Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996) (describing claim construction as an "interpretation" of claim terms). Between

the 2004 Injunction and the 2013 Injunction, the claim language of the '488 patent did not change. Thus, the actual meanings of those claim terms did not change, and the district court's interpretation of the claim terms— whether or not it was expressly provided—did not change from one injunction to the next. Accordingly, the district court simply clarified the meaning of the claim terms implicated by both the 2004 Injunction and the 2013 Injunction.

Moreover, we have previously held that first-time claim constructions provided in the course of contempt proceedings were clarifications, not modifications, to an injunction. In *Aevoe* the district court construed an at-issue claim limitation for the first time in the contempt order. *Aevoe Corp. v. AE Tech Co.,* No. 12-cv-00053, 2012 WL 1559768, at *5 (D. Nev. May 2, 2012). On appeal, we held that the reinsertion of the "colorable imitation" language into the injunction and the related contempt order's claim construction were merely clarifications of the original injunction. *See Aevoe,* 727 F.3d at 1382–83. Similarly, in *Additive Controls & Measurement Systems, Inc. v. Flowdata, Inc.,* 154 F.3d 1345, 1350 (Fed. Cir. 1998), we held that it was "permissible for the [trial] court to resolve the claim construction issue in the course of the contempt proceedings and to conclude that the sale of the [at-issue product] violated the injunction."

For these reasons, the 2013 Injunction is not a modification of the 2004 Injunction.[3] Thus, we cannot exercise

---

[3] The 2013 Injunction was based on the district court's contempt finding, including its determination that the New Connectors are not more than colorably different from the Old Connectors. The contempt proceeding, including issues as to the scope of the injunction, will be appealable once the contempt proceedings have conclud-

jurisdiction over Bridgeport's appeal under § 1292(c)(1). This does not, however, end our jurisdictional inquiry.

B

To exercise jurisdiction under § 1292(c)(2), the appeal must be "final except for an accounting."  To hold that this appeal is final except for an accounting, we would have to extend the narrow exception to the final judgment rule laid out in § 1292(c)(2) to contempt orders.  We decline to do so.

As an exception to the final judgment rule, § 1292(c)(2) is to be interpreted narrowly.  *See Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 967–68 (1994) ("[W]e have . . . repeatedly stressed that the 'narrow' exception [to the final judgment rule] should stay that way and never be allowed to swallow the general rule, that a party is entitled to a single appeal, to be deferred until final judgment has been entered . . . ." (internal citation omitted)); *see also Coopers & Lybrand v. Livesay*, 437 U.S. 463, 474 (1978); *Cobbledick v. United States*, 309 U.S. 323, 324–25 (1940).    Extending § 1292(c)(2) to contempt orders would impermissibly broaden the jurisdiction that the statute confers.

We have recognized that § 1292(c)(2) "confers jurisdiction on this court to entertain appeals from *patent infringement liability determinations* when a trial on damages has not yet occurred."  *Robert Bosch, LLC v. Pylon Mfg. Corp.,* 719 F.3d 1305, 1317 (Fed. Cir. 2013) (en

---

ed.  We need not and do not decide what standard would govern an appeal of an injunction separate from and not intertwined with a contempt order finding of no more than colorable differences.  We hold only that an appeal from an injunctive order cannot be used as a way of securing interlocutory review of the contempt order.

banc) (emphasis added); *see Johannsen v. Pay Less Drug Stores Nw., Inc.*, 918 F.2d 160, 162 (Fed. Cir. 1990) ("Section 1292(c)(2) is straightforward to apply when the civil action involves *only* claims for patent infringement."). Here, we are not considering a determination of patent infringement; we have before us a civil contempt order. And contempt proceedings and patent infringement cases are not co-extensive. *See KSM Fastening Sys., Inc. v. H.A. Jones Co.,* 776 F.2d 1522, 1528 (Fed. Cir. 1985) ("[T]he issue in contempt proceedings is violation *vel non* of the injunction, not patent infringement."), *overruled on other grounds by TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869 (Fed. Cir. 2011) (en banc). Thus, although Congress created an exception to the final judgment rule in *patent* cases via § 1292(c)(2), this patent carve-out does not expressly include contempt orders. Accordingly, § 1292(c)(2) does not extend to contempt orders. *See Johannsen*, 918 F.2d at 163 ("We see no reason why the introduction of *non-patent* claims should trigger § 1292(c)(2) . . . .").

Further, we have recognized that "[a] contempt order interpreting or enforcing an injunction . . . is generally not appealable until final judgment. This is particularly so where no sanction ha[s] yet been imposed for that contempt and proceedings with respect to that question remained ongoing at the time the appeal before us [i]s filed." *Aevoe*, 727 F.3d at 1380–81 (internal citations omitted); *see LMK Enters., Inc. v. Perma-Liner Indus., Inc.*, 423 Fed. App'x 972, 973 (Fed. Cir. 2011) ("As a general rule, an adjudication of civil contempt . . . is not appealable until sanctions have been imposed.").

Here, the district court has imposed sanctions, but only well after the record was fixed for appeal. *See Arlington Indus., Inc., v. Bridgeport Fittings, Inc.*, No. 02-CV-0134, (M.D. Pa. June 23, 2014), ECF No. 284; *Arlington*, No. 02-CV-0134, (M.D. Pa. July 2, 2014), ECF No. 288. And Bridgeport filed notices of appeal after those later

decisions. *Arlington*, No. 02-CV-0134, (M.D. Pa. June 27, 2014), ECF No. 286; *Arlington*, No. 02-CV-0134, (M.D. Pa. July 8, 2014), ECF No. 290. We normally cannot consider documents outside of the record on appeal. *Am. Standard Inc. v. Pfizer Inc.*, 828 F.2d 734, 746 (Fed. Cir. 1987). And even if we were to take judicial notice of these orders, Bridgeport's later notices of appeal suggest that its earlier appeal was premature. *See also Aevoe,* 727 F.3d at 1380 ("A contempt order interpreting or enforcing an injunction . . . is generally not appealable until final judgment. This is particularly so where no sanction had yet been imposed for that contempt and proceedings with respect to that question remained ongoing *at the time the appeal before us was filed.*") (emphasis added); *Szabo v. U.S. Marine Corp.*, 819 F.2d 714, 717 (7th Cir. 1987) (finding no appellate jurisdiction where there was no final order when notice of appeal was filed, but district court later determined attorneys' fees).

## IV

For the foregoing reasons, the appeal is dismissed for lack of jurisdiction.

**DISMISSED**

Costs

No costs.