**TELEFLEX INCORPORATED, and Technology Holding Company, Plaintiffs,**

v.

**KSR INTERNATIONAL CO., Defendant.**

No. 02–74586.

United States District Court, E.D. Michigan, Southern Division.

Dec. 12, 2003.

---

Rodger D. Young, Steven C. Susser, David J. Poirier, Young & Susser, Southfield, MI, for plaintiff/intervenors–plaintiffs/movant.

James W. Dabney, Pennie & Edmonds, New York City, Robert M. Kalec, Dean & Fulkerson, Troy, MI, L. Pahl Zinn, Dickinson Wright, Kenneth J. McIntyre, Detroit, MI, for defendant.

### OPINION AND ORDER

ZATKOFF, Chief Judge.

### I. INTRODUCTION

This matter is before the Court on Plaintiffs' *Ex Parte* Motion for Oral Argument, Plaintiffs' Motion for Summary Judgment of Infringement and Defendant's Motion for Summary Judgment of Invalidity. All motions have been fully briefed by the parties. The Court finds that the parties have adequately set forth the relevant law and facts, and that oral argument would not aid in the disposition of the instant motion. *See* E.D. MICH. L.R. 7.1(e)(2). Accordingly, Plaintiffs' motion for oral argument is DENIED and the Court ORDERS that the motions be decided on the briefs submitted. For the reasons stated below, Defendant's Motion for Summary Judgment of Invalidity is GRANTED and Plaintiffs' Motion for Summary Judgment of Infringement is DENIED as moot.

### II. BACKGROUND

Plaintiffs filed a three-count Complaint on November 18, 2002, alleging the following:

Count I Infringement of United States Patent No. 6,237,565 (hereinafter " '565" or the "Engelgau patent");

Count II Infringement of United States Patent No. 6,305,239 (hereinafter " '239"); and

Count III Infringement of United States Patent No. 6,374,695 (hereinafter " '695").

*See* Complaint. On August 11, 2003, however, the Court ordered, with stipulation, dismissal of Count II and Count III. Thus, the only remaining infringement claim relates to the '565 patent, (Count I). The '565 patent describes and claims a position-adjustable vehicle pedal assembly that allows the driver of a vehicle to adjust the pedal assembly to achieve greater driving comfort. The pedal assembly incorporates an electronic pedal position sensor for use in vehicles sold with electronically

controlled engine and braking systems that require the use of an electronic sensor. Plaintiffs contend that two of Defendant's adjustable pedal assemblies infringe on claim 4 of the '565 patent.

## A. Facts and Procedural History

Plaintiff Teleflex Incorporated (hereinafter "Teleflex") is a Delaware corporation and a manufacturer and supplier of adjustable pedal systems that the automotive industry uses in automobile platforms. Plaintiff Technology Holding Corporation (hereinafter "THC") is a Delaware subsidiary of Plaintiff Teleflex and is the current assignee of the '239, '695, and '565 patents. Defendant KSR International Company (hereinafter "KSR") is a Canadian company and a manufacturer and supplier of automotive components, including adjustable pedal systems, to the automotive industry. Plaintiff Teleflex and Defendant KSR are direct competitors.

This action involves position-adjustable vehicle pedal assemblies, comprising of gas and brake pedals, that a motor vehicle driver uses to actuate the motor vehicle's fuel and brake systems. The pedal assembly may also include a clutch pedal if the vehicle is equipped with a manual transmission. Defendant has offered evidence that adjustable pedal assemblies have been produced since the 1970's. It is undisputed that earlier adjustable pedal assemblies were designed to work in vehicles using cable-actuated throttle controls. In vehicles using cable-actuated throttle controls, depression of the vehicle's gas pedal causes a cable to actuate a carburetor or fuel injection unit, thereby increasing the amount of fuel and air entering the engine. It is also undisputed that in the mid-

1990's, however, increasing numbers of vehicles sold in the United States were manufactured with computer controlled engines requiring the use of "electronic throttle controls" (hereinafter "ETC's"), instead of cable-actuated throttle controls. Unlike a cable-actuated throttle control, ETC's require the use of an electronic sensor to read the position of the gas pedal and vary the engine speed based on the position of the gas pedal. According to Defendant, ETC's allow improved traction control, simplified cruise controls, and greater use of on-board computer systems to improve fuel efficiency and reduce emissions.[1]

Defendant alleges that in mid–1998, it was chosen by Ford to supply adjustable pedal systems for the Ford Crown Victoria, Mercury Grand Marquis, and Lincoln Town Car lines, commencing with the 2001 model year. According to Defendant, the Ford engines installed in these vehicles use cable-actuated throttle controls and, accordingly, the adjustable pedal assemblies supplied by Defendant included cable-attachment arms. Defendant alleges that it was awarded U.S. Patent No. 6,151,986 for the design of the adjustable pedal systems supplied to Ford commencing with the 2001 model year. It has not been alleged that this design infringes on any of Plaintiffs' patents.

Defendant further alleges that in mid–2000, it was chosen by General Motors to supply adjustable pedal assemblies for the Chevrolet and GMC light truck lines, commencing with the 2003 model year. Unlike the cable-actuated Ford engines, the General Motors engines installed in the 2003 light truck lines require the use of an

1. Defendant alleges that ETC's require the use of an electronic sensor to communicate pedal input to the ETC in order to vary engine speed. Defendant refers to that electronic sensor as a "potentiometer" or "pedal posi-

tion sensor." Plaintiff refers to the sensor as an "electronic control." To avoid any confusion, the Court will refer to the electronic sensor as a "pedal position sensor."

ETC. Defendant alleges that to be compatible with the General Motors engines, it supplied its adjustable pedal assemblies with an off-the-shelf pedal position sensor that had previously been used in 1994 and later Chevrolet and GMC pick-up trucks with optional diesel engines. Defendant alleges that it has patents pending for this design. Plaintiffs allege that this design, i.e., an adjustable pedal assembly incorporating an electronic pedal position sensor, infringes on their adjustable pedal assembly patents. By letter dated March 28, 2001, Plaintiff Teleflex stated the following to Defendant:

We understand that you have made several proposals to General Motors Corporation based on an adjustable pedal product in combination with an electronic throttle control . . . . Teleflex believes that any supplier of a product that combines an adjustable pedal with an electronic throttle control necessarily employs technology covered by one or more of the above Teleflex patents and applications.

Willemsen Dec., at Ex. 2. After failing to persuade Defendant enter into a "royalty arrangement," Plaintiff Teleflex filed the present patent infringement action on November 18, 2002.

Before filing its Complaint on November 18, 2002, however, Plaintiff Teleflex assigned the '239, '695' and '565 patents to Plaintiff THC, a subsidiary corporation. On April 2, 2003, Defendant moved to dismiss the action for lack of subject matter jurisdiction because at that point, Plaintiff THC was not a party to the case. Defendant argued that Plaintiff Teleflex lacked standing to sue for infringement because the patents had been assigned to Plaintiff THC. The Court denied Defendant's motion as to the '565 patent finding that an exclusive license granted to Plaintiff Teleflex by Plaintiff THC afforded Plaintiff Teleflex sufficient rights in the patent to satisfy the standing requirement, notwithstanding the absence of Plaintiff THC from the action. Plaintiff Teleflex did not, however, attach sufficient documentation to prove that it had been granted an exclusive license for the '239 and '695 patents and the Court ordered the parties to show cause as to whether such exclusive licenses had been granted to Plaintiff. Instead of responding to the order to show cause, the parties stipulated to the dismissal of the '239 and '695 patents, Plaintiffs dedicating both patents to the public under 35 U.S.C. § 253. Thus, the only remaining patent-in-suit is the '565 patent, invented by Steven Englegau on February 14, 1998. The parties also stipulated to the joinder of Plaintiff THC on September 26, 2003, and Plaintiff THC has agreed to be bound by all of the papers filed by Plaintiff Teleflex in this action.

Plaintiffs allege that two of Defendant KSR's adjustable pedal systems being produced for the General Motors GMT–800 and GMT–360 vehicle platforms literally infringe on each requirement of claim 4 of the '565 patent. Defendant argues that its adjustable pedal assemblies do not infringe on the '565 patent. Moreover, according to Defendant, the '565 patent is invalid because it would have been obvious to someone with ordinary skill in the art of designing pedal systems to combine an adjustable pedal system with an electronic pedal position sensor to work with electronically controlled engines increasingly being used in motor vehicles. The Court finds Defendant's invalidity argument persuasive and because it disposes of the case only Defendant's Motion for Summary Judgment of Invalidity will be addressed.

## III. LEGAL STANDARD

Summary judgment is appropriate only if the answers to interrogatories, deposi-

tions, admissions, and pleadings combined with the affidavits in support show that no genuine issue as to any material fact remains and the moving party is entitled to a judgment as a matter of law. *See* FED. R. CIV. P. 56(c). A genuine issue of material fact exists when there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). In application of this summary judgment standard, the Court must view all materials supplied, including all pleadings, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

The moving party bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. The non-moving party must do more than show that there is some abstract doubt as to the material facts. It must present significant probative evidence in support of its opposition to the motion for summary judgment in order to defeat the motion for summary judgment. *See Moore v. Philip Morris Companies*, 8 F.3d 335, 339–40 (6th Cir.1993).

## IV. ANALYSIS

### A. Claim 4 of the '565 Patent

■ The invention disclosed in the '565 patent is described in the patent's specification as a "simplified vehicle control pedal assembly that is less expensive, and which uses fewer parts and is easier to package within the vehicle." *See* '565 patent, col. 2, lines 2–4, attached to Plaintiffs' Response Brief, at Ex. J. Although the specification is useful for interpretation of claims, it is the claims that actually measure the invention. *See W.L. Gore & Assoc., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1548 (Fed. Cir.1983) (citations omitted). Claim 4 of the '565 patent broadly claims the following:

> A vehicle control pedal apparatus (12) comprising:
>
> a support (18) adapted to be mounted to a vehicle structure (20);
>
> an adjustable pedal assembly (22) having a pedal arm (14) moveable in force [sic] and aft directions with respect to said support (19);
>
> a pivot (24) for pivotally supporting said adjustable pedal assembly (22) with respect to said support (18) and defining a pivot axis (26); and
>
> an electronic control (2) attached to said support (18) for controlling a vehicle system;
>
> said apparatus (12) characterized by said electronic control (28) being responsive to said pivot (24) for providing signal (32) that corresponds to pedal arm position as said pedal arm (14) pivots about said pivot axis (26) between rest and applied positions wherein the position of said pivot (24) remains constant while said pedal arm (14) moves in fore and aft directions with respect to said pivot (24).

'565 patent, col. 6, lines 17–36.

According to the above-quoted language, claim 4 of the '565 patent describes a

position-adjustable pedal assembly with an electronic pedal position sensor attached to the support member of the pedal assembly. Attaching the sensor to the support member allows the sensor to remain in a fixed position while the driver adjusts the pedal. Plaintiffs allege that this feature results in a pedal assembly that is less expensive, less complex, and more compact than its predecessors. Defendant, however, argues that claim 4 is drafted so broadly as to render the "invention" an obvious combination of an adjustable pedal assembly and pedal position sensor already well known in the art.

### B. Obviousness

■■■■ A patent is presumed valid. *See* 35 U.S.C. § 282. Therefore, a party challenging the validity of a patent bears the burden of proving facts that establish invalidity by clear and convincing evidence. *See Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306, 1319 (Fed.Cir.2003). Under 35 U.S.C. § 103, prior art invalidates a patent for obviousness when the "subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which the subject matter pertains." 35 U.S.C. § 103(a). An obviousness inquiry under section 103 ultimately presents a question of law based on several underlying factual inquiries including: (1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the differences between the prior art and the claimed invention; and (4) the extent of any objective indicia of non-obviousness. *See Graham v. John Deere Co.*, 383 U.S. 1, 17–18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); *Winner Int'l Royalty Corp. v. Wang*, 202 F.3d 1340, 1348 (Fed.Cir.2000). Moreover, the central inquiry under section 103 is "whether the combined teachings of the prior art, taken as a whole, would have rendered the claimed invention obvious to one of ordinary skill in the art." *In re Napier*, 55 F.3d 610, 613 (1995). Defendant argues that claim 4 is invalid for obviousness in light of the relevant prior art at the time of the invention. Plaintiffs argue that genuine issues of material fact exist that preclude summary judgment on the issue of obviousness.

### 1. The Scope and Content of the Prior Art

■■■■ Under the first element of the *Graham* test for obviousness, the Court must determine the scope and content of the prior art. The scope of prior art is only that art which is analogous. *See In re Clay*, 966 F.2d 656, 658–59 (Fed.Cir. 1992). Analogous art is art that is not "too remote to be treated as prior art." *In re Clay*, 966 F.2d at 657. In addition, a prior art reference is analogous if it is from the same " 'field of endeavor,' even if it addresses a different problem, or, if not within the same field, if the reference is 'reasonably pertinent' to the particular problem with which the inventor is involved." *In re Conte*, 36 Fed. Appx. 446, 450, 2002 WL 1216965, *4 (Fed.Cir.2002) (citing *In re Clay*, 966 F.2d at 658–59). The determination of relevant prior art is a question of fact. *In re Clay*, 966 F.2d at 658.

Relevant prior art is further defined by 35 U.S.C. §§ 102(a) and (b), which limit the time frame within which prior art can be found. Sections 102(a) and (b) provide:

A person shall be entitled to a patent unless -

(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the inven-

tion thereof by the applicant for patent, or

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States.

According to interrogatory answers served by Plaintiff Teleflex, the inventions claimed in the '565 patent were made on February 14, 1998. Under section 102(a), the prior art of the '565 patent includes any analogous patents or printed publications issued prior to February 14, 1998. Furthermore, the '565 patent issued from a "continuation" application that claimed priority to a "parent" application filed January 26, 1999. Thus, under section 102(b), the prior art of the '565 patent also includes any analogous products that were in public use or on sale in the United States on or before January 26, 1998, a year prior to the application date of the '565 patent. It is undisputed that the prior art alleged by Defendant conform to the time limitations of 35 U.S.C. §§ 102(a) and (b).

In fact, Plaintiffs' only dispute the relevance of one prior art reference asserted by Defendant, U.S. Patent No. 5,010,782 (hereinafter "Asano"). Like the patent-in-suit, Asano discloses a position adjustable pedal assembly. The pedal assembly is pivotally mounted on a support which is connected to the vehicle. A pedal arm moves forward and backward along a guide member by way of a screw drive mechanism. The position of the support pivot remains in a constant position while the pedal arm moves forward and backward along the guide member. Depression of the foot pedal causes the pedal assembly to pivot and actuate a cable operated throttle control. Plaintiffs argue that because Asano depicts a complex pedal assembly design, an inventor presented

with Engelgau's problem of how to design a less complex and less expensive adjustable pedal assembly "would shun Asano." *See* Plaintiff Teleflex's Response Brief, at 20. Defendant responds by arguing that none of the features that allegedly make the '565 patent less complex or less expensive are claimed in claim 4 of the invention. Therefore, according to Defendant, the alleged features that make the patent-in-suit less complex or less expensive are legally irrelevant.

■ Each party asserts that relevant art is defined by the nature of the problem confronting the would-be inventor. *See Ryko Mfg. Co. v. Nu–Star, Inc.,* 950 F.2d 714, 716 (Fed.Cir.1991); *Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1535 (Fed. Cir.1983). Determining relevant prior art, however, involves determining the scope of the inventor's "field of endeavor" before turning to the question of the nature of the problem confronting the inventor. As the Federal Circuit explained in *In re Wood:*

> The determination that a reference is from a nonanalogous art is ... two-fold. First, we decide if the reference is within the field of the inventor's endeavor. If it is not, we proceed to determine whether the reference is reasonably pertinent to the particular problem with which the inventor was involved.

*In re Wood,* 599 F.2d 1032, 1036 (Cust. & Pat.App.1979). Thus, an inquiry into the problem facing the inventor only arises if the alleged prior art is not within the inventor's same field of endeavor. Furthermore, if the alleged prior art exists in the inventor's field of endeavor, it constitutes relevant prior art "regardless of the problem addressed." *In re Clay,* 966 F.2d at 658–59.

The Court finds that Asano is within Engelgau's field of endeavor. Engelgau's field of endeavor is the position-adjustable pedal assembly area of the automotive

component industry. Engelgau admits in his affidavit that before designing the '565 patent he "was generally aware of the various designs in the fields of fixed and adjustable pedal assemblies as well as electronic controls." Plaintiff's Response Brief, at Ex. A. Furthermore, references in the first paragraph of the background section of the patent-in-suit to position-adjustable pedal assemblies in general, apart from their use with electronic pedal position sensors or electronic throttle controls, supports a finding that cable-actuated position-adjustable pedal assemblies such as Asano are within Engelgau's field of endeavor. *See In re Wood,* 599 F.2d at 1036 (finding that reference in the patent's specification to a field of art encompassing the alleged prior art supported a finding that the alleged prior art was within the inventor's field of endeavor.) Accordingly, the Court finds Asano to be analogous prior art to the '565 patent.

Other than Asano, Plaintiffs have not disputed that the prior art cited by Defendant is analogous. The Court finds the following to be analogous prior art and sufficient to establish obviousness by clear and convincing evidence:

1. U.S. Patent No. 5,010,782 filed July 28, 1989 (hereinafter "Asano");

2. U.S. Patent No. 5,998,892 filed September 4, 1996 (hereinafter " '892");

3. U.S. Patent No. 5,408,899 filed June 13, 1993 (hereinafter " '899");

4. U.S. Patent No. 5,241,936 filed September 9, 1991 (hereinafter " '936");

5. U.S. Patent No. 5,460,061 filed September 17, 1993 (hereinafter "Redding");

6. U.S. Patent No. 5,063,811 filed July 9, 1990 (hereinafter "Smith");

7. Various modular self-contained pedal position sensors, including U.S. Patent No. 5,385,068 filed December 18, 1992 (hereinafter " '068") and the "503 Series" pedal position sensor manufactured by CTS Corporation; and

8. A non-position adjustable pedal assembly installed in certain 1994 Chevrolet pick-up trucks comprising of a CTS 503 Series pedal position sensor attached to the pedal assembly support bracket, adjacent to the pedal and engaged with the pivot shaft about which the pedal rotates in operation.

The Court will briefly describe each of the above prior art.

### a. The Asano patent

As the Court previously described, Asano discloses a position adjustable pedal assembly pivotally mounted on a support member. A pedal arm moves forward and backward along a guide member by way of a screw drive mechanism depending on the driver's desired pedal position. The position of the support pivot remains constant while the pedal arm moves forward and backward along the guide member. The design also discloses an attachment for a mechanical throttle cable, the cable being responsive to the pivoting motion of the pedal assembly caused by depression of the accelerator pedal.

### b. The '892 and '899 patents

The '892 and '899 patents disclose electronic pedal position sensors. Each patent teaches the desirability of electronic throttle controls and electronic connections, as distinguished from mechanical throttle controls and mechanical connections, between vehicle accelerator pedals and engine throttles.

### c. The '936 patent

The '936 patent discloses a non-adjustable pedal assembly incorporating a pedal

position sensor. The '936 patent teaches the desirability of placing the pedal position sensor inside the vehicle's passenger compartment mounted on the pedal support member adjacent to a vehicle's accelerator pedal, rather than in a vehicle's engine compartment.

#### d. The Redding patent

The Redding patent discloses an adjustable accelerator pedal assembly in which the accelerator pedal arm slides back and forth along a guide member, but in contrast to Asano and the patent-in-suit, the accelerator pedal pivot moves during pedal adjustment.

#### e. The Smith patent

The Smith patent discloses an electronic pedal position sensor attached to an accelerator pedal support bracket and engaged with a pivot shaft. During the prosecution history of the '565 patent, the Patent Examiner held the combination of Redding and Smith to be obvious.

#### f. The 503 Series pedal position sensor used in certain 1994 Chevrolet pick-up trucks and the pedal position sensor described in the '068 patent.

These modular pedal position sensors teach the advantage of using a pedal position sensor that is engaged with the pivot shaft of an accelerator pedal to send an electronic signal to an electronic throttle control based on the degree the pivot shaft turns in response to depression of the accelerator pedal. In the case of the pedal assembly in certain 1994 Chevrolet pick-up trucks, the modular 503 Series pedal position sensor is mounted to the pedal assembly's support bracket and engaged with the pedal's pivot shaft. The 503 Series pedal position sensor and the pedal position sensor disclosed in the '068 patent will hereinafter collectively be referred to as "the modular pedal position sensors." As previously stated, the Court finds all of the above described prior art to be relevant and analogous to the patent-in-suit.

#### ii. The Level of Ordinary Skill in the Art

▆ The second element in the *Graham* test for obviousness requires determining the level of ordinary skill in the pertinent art. *See Graham*, 383 U.S. at 17–18, 86 S.Ct. 684. Ascertaining the level of ordinary skill in the art is necessary for maintaining objectivity in the obviousness inquiry. *See Ryko*, 950 F.2d at 719. Factors to consider include the educational level of the inventor, the educational level of those who work in the relevant industry, and the sophistication of the technology involved. *See id.*

▆ The parties' experts dispute the level of ordinary skill in the art of designing adjustable pedal assemblies. Plaintiff's expert, Professor Clark J. Radcliffe, argues that "a person of ordinary skill in the art would be one with an undergraduate degree in mechanical engineering (or an equivalent amount of industry experience) who has familiarity with pedal control systems for vehicles." *See* Plaintiff's Response Brief, at Ex. H, ¶ 7. Defendant's expert, Larry Willemsen, argues that a person of ordinary skill in the art would have had "a minimum of two (2) years of college level training in mechanical engineering and two-three years' work experience spanning at least one complete pedal design 'cycle.'" Willemsen Decl., at ¶ 20. The Court finds little difference between these two positions. Furthermore, Defendant has agreed to adopt Professor Radcliffe's understanding of the level of ordinary skill in the art to the extent it differs from Mr. Willemsen's. Therefore, the Court finds the level of ordinary skill in

the art to be a hypothetical person with an undergraduate degree in mechanical engineering or an equivalent amount of industry experience who has familiarity with pedal control systems for vehicles.

### iii. Differences Between the Prior Art and the Claimed Invention

The third element in the *Graham* analyses requires the determination of any differences between the teachings found in the prior art and the claimed invention, from the vantage point of a hypothetical person with ordinary skill in the art. *See Graham,* 383 U.S. at 17–18, 86 S.Ct. 684; *Velander v. Garner,* 348 F.3d 1359, 1380 (Fed.Cir.2003). The claims of the patent-in-suit must be considered "as a whole." *W.L. Gore & Assoc., Inc. v. Garlock, Inc.,* 721 F.2d 1540, 1547–48 (Fed.Cir.1983). It is "[t]he claims, not [the] particular embodiments [that] must be the focus of the obvious inquiry." *Jackson Jordan, Inc. v. Plasser American Corp.,* 747 F.2d 1567, 1578 (Fed.Cir.1984). The Federal Circuit has expressed the significance of claims in defining an invention:

> The claims of the patent provide the concise formal definition of the invention. They are the numbered paragraphs which particularly point out and distinctly claim the subject matter which the applicant regards as his invention. It is to these wordings that one must look to determine whether there has been infringement. Courts can neither broaden nor narrow the claims to give the patentee something different than what he has set forth. No matter how great the temptations of fairness or policy making, courts do not rework claims. They only interpret them.

*E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.,* 849 F.2d 1430, 1433 (Fed. Cir.1988) (quoting *Autogiro Co. of America v. United States,* 181 Ct.Cl. 55, 384 F.2d 391, 395–96 (1967)) (internal quotations and alterations omitted). Thus, while it is entirely proper to use the specification of the patent to interpret what the patentee meant by a word or phrase in a claim, adding to the claim an extraneous limitation appearing in the specification is improper. *See E.I. du Pont de Nemours & Co.,* 849 F.2d at 1433 (citations omitted).

■ Review of prior art, however, is not limited to claims asserted in the prior art. Differences between prior art and the claimed invention are "ascertained by interpretation of the *teachings* of the prior art and of the *claims* of the patent." CHISUM ON PATENTS, § 5.03[5], 5–239 (2003) (emphasis added). In other words, a prior art reference must be considered in its entirety in an obviousness inquiry and must include a "full appreciation of what such reference fairly suggests to one of ordinary skill in the art." *W.L. Gore,* 721 F.2d at 1550.

■ The claims of the patent-in-suit are the starting point for determining any differences between the patent-in-suit and the prior art. Claim construction is a question of law for the Court to resolve. *See Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979 (Fed.Cir.1995). Some courts routinely hold *Markman* hearings to determine the proper interpretation of claim language. This procedure is not always necessary, however. *See e.g. Rogers v. Desa Int'l, Inc.* 166 F.Supp.2d 1202, 1204 (E.D.Mich.2001). The subject matter of the '565 patent is not technologically or linguistically complex. Furthermore, neither party disputes any language of claim 4 in the context of Defendant's motion for invalidity. Accordingly, the Court finds a *Markman* hearing to be unnecessary. *See Rogers,* 166 F.Supp.2d at 1205.

In addition, the Court is not faced with disputed claim language to resolve. *See*

*U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed.Cir.1997). As the court in *U.S. Surgical Corp.* stated:

Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement. It is not an obligatory exercise in redundancy. [C]laim construction may occasionally be necessary in obviousness determinations, when the meaning or scope of technical terms and words of art is unclear and in dispute and requires resolution in order to determine obviousness . . . .

*U.S. Surgical Corp.*, 103 F.3d at 1568. Accordingly, the Court will base its decision on the plain, ordinary, and undisputed language of claim 4 and any ambiguities will be resolved against the moving party. *See Electronic Planroom, Inc. v. McGraw–Hill Companies*, 135 F.Supp.2d 805, 832 (E.D.Mich.2001).

As described above, claim 4 of the '565 patent broadly discloses the following: an adjustable pedal assembly comprising of a support member with a pivot supporting the pedal assembly with respect to the support member, the pivot remaining in constant position while the pedal moves in fore and aft directions with respect to the pivot. The '565 patent further discloses an electronic pedal position sensor attached to the support member and being responsive to the pivot of the pedal assembly for providing a signal to the engine based on the position of the pedal as the pedal assembly pivots about its pivot axis.

■ The Court finds little difference between the teachings of the prior art and claims of the patent-in-suit. Asano teaches the structure and function of each of the claim 4 limitations, except those relating to an electronic pedal position sensor. Specifically, Asano teaches an adjustable pedal assembly pivotally mounted on a support bracket with the pedal moving in a fore and aft directions with respect to the support and the pivot remaining in a constant position during movement of the pedal arm. Thus, Asano "fairly suggests" the same mechanical assembly design asserted in claim 4 of the patent-in-suit. *W.L. Gore*, 721 F.2d at 1550.

Plaintiffs argue that Asano is vastly different from the patent-in-suit. This may be a correct observation based on the preferred embodiment of each patent; however, none of the structural features asserted in claim 4, with the exception of the electronic pedal position sensor, result in an invention that is structurally different from Asano. As Defendant correctly points out, it would be improper to import extraneous limitations from the specification of the '565 patent to avoid a finding of obviousness. *See E.I. du Pont de Nemours & Co.*, 849 F.2d at 1433. Accordingly, the Court finds that Asano teaches every limitation contained in claim 4, with the exception of the limitation referring to an electronic pedal position sensor.

The electronic pedal position sensor asserted in claim 4, however, is fully disclosed by other prior art references. Both the 503 Series pedal position sensor and the '068 patent teach an electronic pedal position sensor being responsive to the pedal pivot shaft and causing a signal to be sent to the engine to increase or decrease engine speed based on the rotation of the pivot shaft. In other words, the 503 Series pedal position sensor and the pedal position sensor disclosed in the '068 patent are designed to be responsive to a pedal's pivot shaft in the same manner as the electronic pedal position sensor described in claim 4 of the '565 patent. Accordingly, prior art expressly teaches both the pivotally mounted pedal assembly and the elec-

tronic pedal position sensor asserted in claim 4.

### a. Suggestion to combine

The fact that Asano and the modular pedal position sensors teach the invention disclosed in claim 4 does not render their combination obvious, however, unless there is "some motivation or suggestion to combine the prior art teachings," either in the prior art itself, or by reasonable inference from the nature of the problem, or from the knowledge of those of ordinary skill in the art. *See Al–Site Corp., v. VSI Int'l, Inc.,* 174 F.3d 1308, 1324 (Fed.Cir. 1999); *see also Yamanouchi Pharmaceutical Co., Ltd., v. Danbury Pharmacal, Inc.,* 231 F.3d 1339, 1343 (Fed.Cir.2000) ("[T]he suggestion to combine requirement stands as a critical safeguard against hindsight analysis and rote application of the legal test for obviousness."); *ACS Hospital Sys., Inc. v. Montefiore Hospital,* 732 F.2d 1572, 1577 (Fed.Cir.1984) ("Obviousness cannot be established by combining the teachings of the prior art to produce the claimed invention, absent some teaching or suggestion supporting the combination.") It is undisputed that in the mid–1990's more cars required the use of an electronic device, such as a pedal position sensor, to communicate driver inputs to an electronically managed engine. It is also undisputed that adjustable pedal assemblies have existed in the art since the late 1970's. Clearly it was inevitable that adjustable pedal assemblies would be joined with an electronic device to work in conjunction with modern electronically controlled engines. This fact is displayed in the prior art by Rixon '593, which dis-closes an adjustable pedal assembly operating in conjunction with an electronic throttle control. *See* Plaintiffs' Response Brief, at Ex. L. According to one of Plaintiffs' experts, Timothy Andresen, unlike the patent-in-suit, Rixon '593 discloses an adjustable pedal assembly with an electronic sensor that is not attached to the pedal mounting bracket and moves during pedal adjustment. *See* Andresen Decl., at ¶¶ 5–6. Andresen states that placing the electronic sensor "where it moves during pedal adjustment can be undesirable due to the potential for electrical connector wire fatigue failure and/or insulation abrasion." *Id.* at ¶ 6. It is undisputed that Engelgau sought to improve on this design. *See* Plaintiff's Response Brief, at Ex. J, Col. 1, lines 43–52. According to Andresen, Engelgau's mounting of the electronic pedal position sensor to the pedal assembly support bracket separated the pedal adjustment movement from the electronic sensor. Andresen Decl. at ¶ 7. Andresen argues that this is the "critical feature" of the design that would not have been obvious to someone familiar with the state of art. *See* Andresen Decl. at ¶ 7. It is also this feature which, according to Andresen, "optimizes package space requirements, minimizes weight, and simplifies the overall design." *Id.* at ¶ 9. Thus, the issue is whether something in the prior art suggests combining the teachings of Asano, a pedal assembly in which the pivot does not move with pedal adjustment, with the teachings of the various modular pedal position sensors known in the art to solve the problem of designing a less expensive, less complex and more compact design.[2]

---

**2.** Plaintiffs' experts agree that the alleged novelty of the '565 patent is found in the fact that the electronic control is mounted to the pedal assembly support member and responsive to the pivotal motion of the pedal pivot shaft. *See* Radcliffe Decl. at ¶ 15; Andresen Decl. at

¶ 5–7. This feature is asserted in claim 4. In addition, however, Plaintiffs argue that the problem of designing a less complex, less expensive, and more compact design was also solved by the simplified adjustable pedal assembly disclosed in the preferred embodiment

The incentive to combine prior art references can come from the prior art itself or be reasonably inferred from the "nature of the problem to be solved, leading inventors to look to references related to solutions to that problem." *Pro–Mold & Tool Co. v. Great Lakes Plastics, Inc.*, 75 F.3d 1568, 1573 (Fed.Cir.1996). According to Plaintiff's experts, prior art such as the Rixon '593 suffered from being too complex because the pedal position sensor is located in the pedal housing and its fore and aft movement with the adjustment of the pedal could cause problems with wire failure. Thus, the solution to the problem required an electronic control that does not move with the pedal arm while the pedal arm is being adjusted by the driver. The Court finds that a person with ordinary skill in the art with full knowledge of Asano and the modular pedal position sensors such as the CTS 503 Series would be motivated to combine the two references to avoid the problems with Rixon '593.

In addition, the fact that Asano and the modular pedal position sensors both relate to the art of vehicle pedal systems is a factor suggesting their combination. *See In re Harmon*, 42 C.C.P.A. 921, 222 F.2d 743, 746 (1955) ("That the references would have suggested doing what appellant has done to anyone skilled in the art seems beyond doubt since both references relate to coating . . . ."); *In re Marx*, 43 C.C.P.A. 880, 232 F.2d 638, 640 (1956) ("since both patents relate to the same art, it would readily have occurred to one having cognizance of the features of the references that it might be desirable to [combine them]."); *Display Technologies, Inc. v. Paul Flum Ideas, Inc.*, 60 Fed.Appx.

787, 794, 2002 WL 32066815 (Fed.Cir.2002) ("The district court did not err in combining the prior art references in this case. The [prior art references] all are within the same field of gravity-fed beverage dispensers.") Furthermore, the prior art contains express teachings with respect to the desirability of attaching pedal position sensor to the support member of a pedal assembly with the sensor being responsive to the pedal's pivot shaft in the same manner as the invention claimed in the '565 patent. *See* U.S. Patent No. 5,063,811 to Smith (hereinafter "Smith"), attached to Defendant's Reply Brief, at Ex. 5. Smith reveals a rotary potentiometer, which provides basically the same function as the 503 Series pedal position sensor, attached to a fixed support member and responsive to the pedal's pivot shaft. Additionally, Smith contains express teachings as to the desirability of attaching an electronic control to a support member in order to avoid the wire failure problems identified with Rixon '593 and allegedly solved by the patent-in-suit: "[T]he wiring to the electrical components must be secure from the possibility of chafing which will eventually result in electrical failure. Thus, the pedal assemblies must not precipitate any motion in the connecting wires themselves . . . ." *Id.* at Col. 1, lines 33–38. Accordingly, the Court finds that Defendant has offered sufficient evidence of a suggestion to combine a pivotally mounted adjustable pedal assembly with an off-the-shelf modular pedal position sensor to solve the problem of designing a less expensive, less complex, and more compact adjustable pedal assembly for use with electronically controlled vehicles.

---

of the '565 patent. Plaintiffs make the argument in an attempt to distinguish Asano. This argument, however, is unavailing because, as the Court noted above, claim 4 contains none of the limitations that allegedly

make the preferred embodiment of the pedal assembly structurally less complex than the Asano pedal assembly. *See E.I. du Pont de Nemours & Co.*, 849 F.2d at 1433 (citations omitted).

A finding of obviousness is further supported by the prosecution history of the patent-in-suit. Defendant points out that during prosecution of the '565 patent before the Patent and Trademark Office, the Examiner rejected a claim similar to claim 4 as an obvious combination of prior art. Specifically, the Examiner cited Redding for its disclosure of an adjustable pedal assembly comprising of a pedal movable in fore and aft directions on a pivotally movable guide rail mounted to a support member. The Examiner cited Smith for is disclosure of an electronic pedal position sensor attached to a pedal assembly support member, which the Examiner described as "old and well known in the art." *See* Office Action of November 13, 2000, attached to Defendant's Reply Brief, at Ex. 3. The Examiner stated his obviousness conclusion in the following manner:

> Since the prior are [sic] references are from the field of endeavor, the purpose disclosed by Brown [sic] would have been recognized in the pertinent art of Redding. Therefore it would have been obvious at the time the invention was made to provide the device of Redding with the electronic throttle control means attached to a support member as taught by Smith.

*Id.* at 3.

Claim 4 of the '565 patent was allowed by the Examiner, however, because of an added structural limitation, "wherein the position of said pivot (24) remains constant while said pedal arm (14) moves in fore and aft directions with respect to said pivot (24)." '565 patent, col. 6, lines 33–36. Adding this structural limitation distinguished the patent-in-suit from Redding because the pedal pivot described in Redding does not remain constant while the pedal arm moves in fore and aft directions. Asano, however, discloses a pivot that does remain in a constant position while the pedal arm moves back and forth. Thus,

the Court finds persuasive Defendant's argument that if Asano had been cited to the Examiner, he would have found the combination of Asano and Smith to be obvious, just as he found the combination of Redding and Smith to be obvious.

### i. Secondary Considerations

The final element of the *Graham* test for obviousness requires ascertaining the extent of any objective indicia of non-obviousness. *See Graham*, 383 U.S. at 17–18, 86 S.Ct. 684. These so-called "secondary considerations" include commercial success, long-felt need, failure of others, skepticism and unexpected results. *See 3M v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1573 (Fed.Cir.1992). In some cases, such evidence is the most probative of obviousness. *See Richardson–Vicks, Inc. v. Upjohn Co.*, 122 F.3d 1476, 1483 (Fed.Cir.1997) (citing *Stratoflex*, 713 F.2d at 1538). Secondary considerations, however, do not control the obviousness inquiry. *See Richardson–Vicks*, 122 F.3d at 1483 (citing *Newell Companies, Inc. v. Kenney Mfg. Co.*, 864 F.2d 757, 768 (Fed. Cir.1988)). In other words, secondary considerations "are but a part of the 'totality of the evidence' that is used to reach the ultimate conclusion of obviousness." *See Richardson–Vicks*, 122 F.3d at 1483.

■■ Plaintiffs argue that the commercial success of the design depicted in the Engelgau patent supports a finding of nonobviousness. Commercial success, however, "is relevant only if it flows from the merits of the *claimed* invention." *Sjolund v. Musland*, 847 F.2d 1573, 1582 (Fed.Cir. 1988). In other words, the party asserting commercial success must prove a nexus between the commercial success and the claimed invention. *See Simmons Fastener Corp. v. Illinois Tool Works, Inc.*, 739 F.2d 1573, 1575 (Fed.Cir.1984).

Plaintiffs offer the declaration of Plaintiff Teleflex's Director of Pedal Engineer-

ing, Charles Meier. *See* Plaintiffs' Response Brief, at Ex. M. According to Mr. Meier, the "adjustable pedal assembly design referenced in the Engelgau patent has been placed in Ford's U–137/P–131 program." *Id.* at ¶ 3. Furthermore, according to Mr. Meier, Plaintiff Teleflex has "shipped approximately 150,000 adjustable pedal units to Ford for the U–137/P–131 program." *Id.* at ¶ 5. The Court finds this evidence insufficient to overcome Defendant's strong showing of obviousness.

Plaintiff has offered an overall sales figure for the adjustable pedal assembly design "referenced in the Engelgau patent." *Id.* at ¶ 3. As Defendant correctly notes, the pedal assembly design referenced in the Engelgau patent describes two embodiments, one comprising of a optional "cable attachment member 78" for use with engines utilizing a cable-actuated throttle control, and a second comprising of an "electronic throttle control 28." The embodiment comprising of a "cable attachment member 78" is not protected by claim 4. Without knowing what amount, if any, of the 150,000 units allegedly sold incorporated an electronic throttle control protected by claim 4, it is impossible to gauge the commercial success of the invention. Furthermore, even if the Court was presented with enough evidence to find some or all of the unit sales to be of a pedal assembly protected by claim 4, the evidence would still amount to simple sales figure with no evidence of nexus. *See Kansas Jack, Inc. v. Kuhn*, 719 F.2d 1144, 1151 (Fed.Cir.1983) (upholding the district court's invalidity ruling and holding the patent obvious when "the evidence of commercial success consisted solely of the number of units sold"); *In re Baxter Travenol Labs.*, 952 F.2d 388 (Fed.Cir.1991) (citing *Kansas Jack, Inc.*, 719 F.2d at 1151) ("information solely on numbers of units sold is insufficient to establish commercial success.")

In addition, Plaintiffs have not attempted to offer evidence of any other secondary consideration, such as long-felt need or failure of others. The Federal Circuit has found that this fact warrants giving less weight to an argument based on commercial success. *See Merck & Co. v. Biocraft Laboratories, Inc.*, 874 F.2d 804, 809 (Fed. Cir.1989) ("Commercial success is an indication of nonobviousness that must be considered in a patentability analysis ... but in the circumstances of this case, where it is the only such indication, it is insufficient to render Merck's claimed invention nonobvious."). Therefore, the Court finds the evidence of commercial success insufficient to overcome Defendant's clear and convincing evidence of obviousness.

### 5. Conclusion

Accordingly, the Court finds that a hypothetical person with an undergraduate degree in mechanical engineering or an equivalent amount of industry experience who has familiarity with pedal control systems for vehicles would have found it obvious to attach a modular pedal position sensor to Asano's support member, with the pedal position sensor being responsive to the pedal assembly's pivot shaft. Therefore, claim 4 of the '565 is invalid for obviousness. *See* 35 U.S.C. § 103(a).

### V. CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment of Invalidity is GRANTED. Plaintiffs' *Ex Parte* Motion for Oral Argument is DENIED. Plaintiffs' Motion for Summary Judgment of Infringement is DENIED as moot.

IT IS SO ORDERED.